In the Matter of the Application of ATLAS LATHING CORP., Petitioner, for an Order Directing JOHN J. BENNETT, JR., and Others, Respondents, to Return Books, etc.

Supreme Court, Kings County, June 10, 1941.

*Lotterman & Tepper*, for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Benjamin Heffner* of counsel], for the respondents.

Nova, J. On November 25, 1940, an Assistant Attorney-General, accompanied by a police officer in plain clothes and an investigator, appeared at the petitioner's offices and, under the cloak of a subpoena *duces tecum*, demanded and acquired possession of all its books, papers and documents. They have remained under the control of the Attorney-General's office since such time. This application is brought for the purpose of compelling their return. Upon the argument of the motion it was the Attorney-General's contention that the above corporate records were surrendered *voluntarily* by petitioner's officers following the service upon them of the subpoena. A question also arose, even assuming the impropriety of the original acquisition of the records, whether counsel for the petitioner subsequently waived a right to an immediate restoration thereof. For the purpose of ascertaining the true factual situation the court directed that the matter be set down for the taking of testimony. That hearing has now been had and I am convinced that the contentions urged by the Attorney-General, as a basis for the retention of the books, are groundless.

In the exercise of his statutory power the Attorney-General may require the production of any books and papers which he deems relevant or material to an investigation. Such power, however, even if properly exercised, may not be invoked to justify the course of procedure which was adopted in the instant case. The power to subpoena a record for pertinent examination does not imply any concomitant right of seizure.

" The rule appears to be clear and well settled that one who procures or compels the production of papers cannot take the *custody* of those papers from the person producing them." (*State* v. *Smithmeyer*, 110 Kan. 172, at p. 176.) To the same effect it is stated in 70 Corpus Juris (at p. 54) that " Books or papers produced in obedience to a subpoena *duces tecum* remain under the control of the person producing them, and he cannot be required to deposit or leave the same with a commissioner who is conducting the examination, or the clerk of the court, but they must be returned to him after such use or examination of them as may be necessary and proper has been made." (See, also, *Matter of Randall*, 87 App. Div. 245, 247.)

The foregoing cardinal principle of orderly procedure was patently violated in the present case. Here, petitioner's books, etc., were physically taken over by the Attorney-General's staff in a manner

highly suggestive of a raid upon the office without the protective benefit to petitioner of a search warrant conferring such prerogative. To justify or condone such conduct is to completely ignore one of the several bulwarks which have been designed in this country and State against the exercise of dictatorial oppression under whatever guise it may be attempted. (U. S. Const. Fourth Amendt.; State Const. art. 1, § 12; Civ. Rights Law, § 8.)

Further, there is no warrant in law authorizing the Attorney-General, as here, to issue a general subpoena requiring the " forthwith " production of records. The " forthwith " nature of such demand arbitrarily precluded petitioner of a reasonable opportunity to secure a judicial determination of the legal efficacy or propriety of the process. Such reasonable opportunity to be heard, in which a person may defend, enforce and protect his rights, is an essential prerequisite. In the absence of such opportunity, the constitutional guaranty of due process is flouted (see *Matter of Grout*, 105 App. Div. 98, 109) and the requirements of section 411 of the Civil Practice Act wholly disregarded. That section specifies that a subpoena *duces tecum* " must be served at least five days before the day " when a book of account must be produced and such provision presupposes the absolute nullity of a purported process which demands a " forthwith " production.

Even if it be assumed, however, that the Attorney-General's office initially obtained lawful possession of the records involved in this matter, there is no statutory warrant which justifies their continued retention. Section 343 of the General Business Law clothes the Attorney-General with the power to require the production of any books or papers which he deems relevant or material to an investigation conducted by him in ascertaining whether a monopoly within the State has been created, established or maintained. When the books have been thus produced, he may question witnesses as to their contents. The section does not expressly nor by fair implication confer upon him the right virtually to impound the records so produced for subsequent possible use in a criminal proceeding. It is cogently propounded by petitioner that if the Attorney-General is vested with the power to retain books for a day or a week or a month, why has he not the power to retain them for a year or more? The mere posing of the query itself would seem inevitably to prompt the sole logical conclusion which is applicable herein under the circumstances.

The petitioner's records consist allegedly of some 18,000 papers, etc. They were seized on November 25, 1940. Since such time due demand has been made on several occasions for their return. Although various indefinite promises to accede therewith have been

given, the same have failed to eventuate into actuality. It is alleged that in the meantime the orderly continuance of petitioner's business is being seriously jeopardized. It is alleged that, in the absence of its records, petitioner is meeting with grave difficulty in ascertaining the proper amounts payable on account of social security, unemployment insurance and workmen's compensation requirements. In many other ways, unnecessary herein further to specify, petitioner is being impeded in the conduct of its business by the fact that its records are being withheld.

Respondent is thus directed, within two days after service of the order to be entered herein, to return all the records in question.

During the course of the hearing petitioner's counsel moved to amend the application so as to demand that the Attorney-General be restrained from using the contents of any of the seized records or evidence derived therefrom. The court granted the application so to amend. After a careful reflection, I have concluded that the relief thus sought is proper. The law does not confer upon any official the enormous and dangerous prerogative arbitrarily to swoop down upon and rummage through a man's effects and to seize his papers, books and records. We cherish the ancient precept of English jurisprudence that a man's home is his castle. In speaking of the English law in this respect, Lieber, on page 62 of his work On Civil Liberty and Self-Government (1859), states that " no man's house can be forcibly opened, or he or his goods be carried away after it has thus been forced, except in cases of felony, and then the sheriff must be furnished with a warrant, and take great care lest he commit a trespass. This principle is jealously insisted upon." If there be crime suspected which may be disclosed by seizure and examination of a man's documents, the law of our State amply provides orderly and proper methods pursuant to which a prosecuting official· may proceed in the public interest. Such methods have been ably restated by Judge BRANCATO in *People* v. *Carver* (172 Misc. 820). There (at p. 824) he writes: " A seizure of property to be used by the district attorney as evidence in a criminal prosecution is justifiable if effected from the person of the accused at the time of his arrest or if such seizure is incidental to a legal arrest. (*People* v. *Defore*, 242 N. Y. 13; *People* v. *Chiagles*, 237 id. 193.) A seizure of property may also be effectuated through the medium of a search warrant, which is an order of the court to search for and seize property stolen or embezzled; or used in the commission of a felony; or intended for the commission of a public offense or in the possession of one to whom it may have been delivered for the purpose of concealing it or preventing its discovery. The procedure necessary for the issuance of a search warrant is

also prescribed by statute, and no search warrant may issue except for the causes and in the manner stated. (Code Crim. Proc. §§ 791–796; *People ex rel. Simpson Co.* v. *Kempner*, 208 N. Y. 16.) An order of this court, therefore, purporting to authorize a district attorney to seize property consisting of books, papers and other documents belonging to third parties because they contain evidence of crime and without compliance with the statutory regulations prescribed, would be tantamount to circumventing the provisions of the statute (*supra*) by reading into it added provisions not only affecting the subject-matter of the search warrant but nullifying as well the procedure now prescribed for its issuance."

I agree with the conclusion there reached. I also hold that the forcible and compulsory extortion, seizure and retention of a man's private papers, accomplished without the benefit of proper legal process, should not be indirectly sanctioned by permitting evidence procured therefrom to be used as the basis upon which to predicate a criminal charge against him.

In reaching the above conclusion, I am fully cognizant of the ruling initially enunciated by our Court of Appeals in *People* v. *Adams* (176 N. Y. 351). A consideration of that case, however, in my opinion, reveals its inapplicability to the facts of the present situation. There, unlike the instant case, *a valid search warrant was issued.* In its execution, the officer incidentally seized certain letters not specifically embraced within the authorization of the process. The theory adopted by the court was that, having a perfectly legal right to search for property relating to a particular offense, evidence of other property not specifically mentioned in the warrant would not be excluded upon the trial of the defendant. The opinion, however, does not approve the proposition that an officer, without any semblance of legal authority whatever, may violate the privacy and sanctity of a man's home or of his office, seize all his books and papers, without process, and procure his indictment or conviction upon the proof so obtained. The rule laid down in the *Adams* case was followed by the Court of Appeals in *People* v. *Defore* (242 N. Y. 13), where, though there was an improper seizure of a defendant's effects, at least such seizure was the mere incident of a due arrest. In adhering to the rule laid down in the *Adams* case, Judge CARDOZO significantly stated: " We put the question aside whether in some other situation differing from the one before us, there may be need to qualify or soften a ruling so comprehensive. In putting it aside, we would not be understood as expressing, even by indirection, a belief that change is called for. Enough for present purposes to decide the case at hand. The weapon discovered through this search was an imple-

ment of crime. It was not the kind of thing to be protected against prying inquisition. It was a thing to be ferreted out and brought to light and, when found, wrested from the holder (Code Crim. Pro. § 792)."

Here the papers were not seized as an incident of an arrest or during the execution of a lawful search warrant. In consequence, I conclude that the present situation constitutes a qualifying exception to the rule laid down in the *Adams* and *Defore* cases. A virtual raid upon premises, without color of legal right, may not be condoned, irrespective of the laudable zeal of public officials who are intrusted with the proper administration of criminal justice. A destruction of personal security, as guaranteed by the provisions of section 12 of article 1 of the State Constitution, obviously may not be palliated or condoned under the guise of official zeal.

Motion granted. Submit order to be settled on two days' notice in accordance with the foregoing.