Argued February 5, affirmed June 10, 1959

# POPE & TALBOT, INC. *v.* STATE TAX COMMISSION

340 P. 2d 960

608

*John R. Sabin,* Portland, argued the cause for appellant. With him on the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, Portland.

*B. F. Bednarz,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, Salem and Carlisle B. Roberts, Assistant Attorney General, Salem.

Before McALLISTER, Chief Justice, and PERRY, SLOAN and O'CONNELL, Justices.

O'CONNELL, J.

The plaintiff seeks a declaratory decree determining the validity of a subpoena duces tecum served upon the plaintiff by the defendants who constitute the Oregon State Tax Commission. Hereafter we shall refer to the defendants as the commission.

The lower court held that the subpoena was valid and decreed that the plaintiff comply with it. The plaintiff appeals from that decree.

The subpoena directed the plaintiff to appear before an agent of the commission at a specified time and place and contained the following command:

> "The corporation is directed to present at such time all books, records and files which it maintains showing the names and addresses of loggers and other individuals and corporations from whom logs, pilings, pulpwood and other forest products were purchased in the year 1954, together with the number of board feet or other units purchased from each.

"An examination and inspection by this Commission of the above described records is deemed necessary in connection with the administration and enforcement of the Forest Products Harvest Tax, Chap. 321, Oregon Revised Statutes."

The subpoena recited that it was served by virtue of the authority vested in the commission under certain sections of the Forest Products Harvest Tax Act, Ch. 321 ORS, which will be discussed below.

The plaintiff notified the commission that it declined to honor the subpoena, setting forth the reasons for its action.

It was admitted by the commission that the subpoena was not issued in connection with any controversy as to the plaintiff's liability under the Forest Products Harvest Tax.

Although the language of the subpoena states that in calling for the plaintiff's books, records and files the commission's purpose was general, i.e., "in connection with the administration and enforcement of the Forest Products Harvest Tax," the briefs and argument indicate that the information sought related to an investigation designed to determine whether the statute was being obeyed, particularly by those conducting small logging operations.

The plaintiff attacks the commission's action on several grounds. It is first argued that the challenged subpoena was not within the statutory authority granted to the commission. The enforcement section under which the commission acted is ORS 321.135, which reads as follows:

"(1) This chapter shall be enforced and the taxes imposed by this chapter shall be collected by the commission which shall have the power to prescribe forms and to promulgate rules and regula-

tions for the ascertainment, assessment and collection of the taxes imposed by this chapter.

"(2) For the purpose of determining the taxes imposed by this chapter, the commission may:

"(a) Require any person to furnish any information deemed necessary.

"(b) Examine the books, records and files of such person.

"(c) Subpena and examine witnesses and administer oaths."

The plaintiff contends that in granting to the commission powers of investigation "for the purpose of determining the taxes imposed" under the statute, the legislature intended to limit the commission's power to those situations where a specifically named taxpayer is under investigation. Stated differently, the plaintiff maintains that the commission was not granted the authority to engage in a "fishing expedition" for the purpose of uncovering possible violators unknown either to the commission or the plaintiff.

■ We do not agree with this interpretation of ORS 321.135. We regard the phrase "for the purpose of determining the taxes imposed" as embracing the authority to require the production of records not only in connection with the violations or suspected violations by persons known to the commission, but by unknown persons as well and more than this, as embracing the power of investigation to determine whether the act is being complied with even though the commission does not have evidence that violations are occurring.

■■ Further, it is possible to justify the commission's search for information on a still broader ground. The legislature may grant to its agencies the power to compel disclosure for a variety of useful purposes

and as stated in 1 Davis, Administrative Law Treatise, § 3.01 p 160:

> "* * * Investigations are useful for all administrative functions, not only for rule making, adjudication, and licensing, but also for prosecuting, for supervising and directing, for determining general policy, for recommending, legislation, and for purposes no more specific than illuminating obscure areas to find out what if anything should be done."

Such broad powers of investigation were granted to the Tax Commission. The legislature imposed upon the commission the duty to "see that * * * complaints concerning the law may be heard, information as to its effects may be collected and all proper suggestions as to amendments may be made." ORS 306.170. To carry out these duties the commission was given the power to make rules and regulations necessary to the effective discharge of its duties, ORS 306.100, and to "order the production of any books or papers in the hands of any person, company or corporation, whenever necessary in the prosecution of any inquiries deemed necessary or proper in their official capacity." ORS 306.190(1). The authority so granted may be exercised by the commission in the process of making investigations to determine the need for further legislation, the need for additional or different administrative rules and regulations; to uncover facts in aid of the adjudication function of the commission, and to gather other data relevant to the proper administration of the act.

If the commission had as one of its objects in issuing the subpoena in this case any one of the purposes just alluded to, it would have been within the bounds of its authority.

■ The plaintiff contends that the plaintiff is free from any statutory sanction in not complying with the subpoena because the statute requires "taxpayers" only to obey subpoenas duces tecum and that having paid its taxes it is not a "taxpayer" within the meaning of the statute. The statute relied upon is ORS 321.225 which provides in part that no "taxpayers shall * * * disobey any subpena duces tecum of the commission."

We do not accept the plaintiff's interpretation of the statute. We think that the word "taxpayer" in ORS 321.225 was intended to refer to all persons coming within the provisions of the act whether their taxes were paid or not. This is the meaning described in ORS 321.005(12) which reads as follows:

> " 'Taxpayer' means any individual, partnership, corporation or association of whatever nature, owning the harvested forest products at the time of harvesting, or acquiring title thereto by virtue of such harvesting and payment therefor. However, the grantor of forest products who re-acquires the forest products after harvesting shall be deemed the taxpayer with respect to such forest products."

■■ It is urged however, that if the statute is interpreted to grant this broad power, it runs afoul of state and federal constitutional prohibitions against unreasonable search and seizure. It is possible that the contention would have been sound at an earlier day in the development of American administrative law. But it is not so today. The modern law is stated in *Oklahoma Press Publishing Co. v. Walling*, 327 US 186, 66 S Ct 494, 90 L Ed 614, 166 ALR 531 (1946) where the court said:

> "Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a sub-

poena or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." 90 L Ed 614, 629.

The law is more concisely summarized in 1 Davis, op. cit., supra, p 181, as follows:

"Except for limitations concerning breadth and relevancy, the Fourth Amendment does not now restrict an administrative subpoena for records or an administrative requirement of reports."

Since we hold that the subpoena in the case at bar satisfies the limitations on breadth and relevancy, the Fourth Amendment is not violated. Further, we choose to apply the same standards to the Fourth Amendment's counterpart in the Oregon Constitution, Article I, § 9.

Mr. Davis' brilliant essay on the investigatory powers of administrative agencies makes it eminently clear that most of the curbs once placed upon the authority of such agencies to demand books and records of a business subject to regulation have been lifted. 1 Davis, op. cit., supra, Ch 3.

The plaintiff leans upon the earlier cases for a part of its support in contending that the bounds within which an administrative agency can force information are narrow. Plaintiff's reliance upon this

earlier law will not help it in this court for we endorse the view expressed in most of the recent federal and state cases recognizing the validity of broad inquiry if authorized and relevant. *Federal Trade Comm. v. Crafts,* 355 US 9 (1957); *Civil Aeronautics Board v. Hermann,* 353 US 322 (1957); *United States v. Morton Salt Co.,* 338 US 632, 70 S Ct 357, 94 L Ed 401 (1950); *Alexander v. New York State Commission, Etc.,* 306 NY 921, 118 NE2d 588 (1954); *Humble Oil & Refining Co. v. Daniel,* 259 SW2d 580 (Tex Civ App 1953), cert. den., 347 US 936 (1954).

■■ More specifically we recognize that an administrative agency may be granted the power to issue subpoenas even though they are not related to adjudication or probable violations of the law, *Stahlman v. Federal Communications Commission,* 75 D C App 176, 126 F2d 124 (1942); *Nelson v. Wyman,* 99 N H 33, 105 A2d 756 (1954); even though the company from whom the information is sought is not under investigation, *Newfield v. Ryan,* 91 F2d 700 (5th Cir 1937), cert. den. 302 US 729 (1937), noted 36 Mich L Rev 786 (1938); even though the investigation concerns persons not named in the subpoena, *Securities Exchange Com'n v. Vacuum Can Co.,* 157 F2d 539 (7th Cir 1946); and even though the company called upon to reveal its records is not affected with a public interest, *Fleming v. Montgomery Ward & Co.,* 114 F2d 384 (7th Cir 1940), cert. den. 311 US 690 (1940). This, it may be urged, is an invitation to an unbridled license to satisfy bureaucratic curiosity. 1 Davis, Administrative Law Treatise, § 3.14. But there are limitations on the agency's power of compulsory disclosure. The inquiry must be relevant to a lawful investigatory purpose and must be no broader than the needs of the particular investigation. *Oklahoma Press Publishing Co. v. Wall-*

*ing,* supra; 1 Davis, op. cit., supra, § 3.06. These limits are stated in *United States v. Morton Salt Co.,* supra, as follows:

> "Of course a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. Federal Trade Comm. v. American Tobacco Co., 264 US 298, 68 L. Ed. 696, 44 S. Ct. 336, 32 ALR 786, supra. But it is sufficient if the inquiry is within the authority of the agency, the demand not too indefinite and the information sought is reasonably relevant. 'The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.' Oklahoma Press Publishing Co. v. Walling, 327 US 186, 208, 90 L Ed 614, 629, 66 S Ct 494, 166 ALR 531." 338 US 632, 652.

■ This is not a case where the commission is asking to go through all of the plaintiff's records. The subpoena in the instant case limits the commission's demand to the books, records and files showing the names and addresses of persons from whom the plaintiff purchased forest products during a specified year, i.e., 1954, and the amounts purchased during that period. In terms of purpose the subpoena informs the plaintiff that the records are necessary "in connection with the administration and enforcement" of the act.

We deem this a sufficient identification of the records to satisfy the requirement of specificity both as to time and subject matter. "It specifies a reasonable period of time and with reasonable particularity, the subjects to which the documents called for relate." *Brown v. United States,* 276 US 134, 143, 72 L Ed 500, 504, 48 S Ct 288, 290 (1927).

The test of relevancy is also met. The subpoena

does not purport to reach all of the plaintiff's records. Although the plaintiff alleges in its complaint that its books and records contain information concerning persons who are not taxpayers under the provisions of the Forest Products Harvest Tax it is admitted elsewhere in' the complaint that the purpose of the subpoena was to investigate "taxpayers."

It is true that in complying with the commission's request the plaintiff would be required to furnish records which might include data relating to persons who were not obligated to pay taxes under the Forest Products Harvest Tax Act, but it could not be reasonably argued that this should make the subpoena invalid because if such a limitation were placed upon the commission's authority it would render impotent one of the most effective and necessary methods of detecting the unlawful evasion of taxes. *Federal Trade Comm. v. Tuttle*, 244 F2d 605 (2d Cir 1957).

 It has been established that a person may be required to furnish to the tax collection agency of government information concerning the tax liability of other persons and this information may be sought through the aid of a subpoena. *Falsone v. United States*, 205 F2d 734 (5th Cir), cert. den. 346 US 864 (1953); *Brownson v. United States*, 32 F2d 844 (8th Cir 1929); *United States v. First National Bank*, 295 F 142 (D. C. Ala 1924); but cf., *Hubner v. Tucker*, 56-2 USTC Par. 9937 criticized in 43 Va L Rev 114 (1957). The information sought in the instant case serves a similar purpose, i.e., to determine whether those obligated to pay taxes are doing so. The use of a subpoena to accomplish such a purpose is proper. The fact that the records may also relate to non-taxpayers will not render the subpoena invalid if there

is a reasonable probability that the records called for contain information concerning taxpayers obligated to comply with the act. If the commission can sift out of the records the information which relates to other taxpayers then, of course, it should be no concern to the plaintiff that the persons investigated are not named.

■ There is no contention here that compliance with the subpoena will impose an unreasonable burden upon the plaintiff in the conduct of its business. Had that been shown the plaintiff's refusal to accede to the commission's demand would have been proper. *Hale v. Henkel*, 201 US 43 (1906); *Schwimmer v. United States*, 232 F2d 855 (8th Cir 1956); *Bank of America National Savings & Trust Ass'n v. Douglas*, 105 F2d 100 (D.C.App. 1939).

■ The right of a duly authorized administrative agency to require information in aid of legislation is unquestioned. As we interpret the statutes the commission had the authority to call for relevant documents from the plaintiff for the purpose of framing new legislation or for the purpose of determining whether new legislation was necessary or desirable, assuming, of course, that the request was within the permissible limits of breadth and relevancy.

■ This being true there would seem to be no valid reason why the investigation could not be conducted with the same breadth where the object of search is to reveal possible violations of the act. And if the subpoena can be read to describe an inquiry which is within the authority of the commission and relevant to its legitimate purpose it should be of no import that the subpoena does not specifically name the suspected violators or state the suspicions which prompted the

search; it is enough if the subpoena informs the company of the character of the documents it is expected to produce and indicates a purpose of inquiry related to the commission's function. This the subpoena did in the instant case. It is unrealistic to insist that the commission must identify violators or violations as a condition to a valid issuance of a subpoena. In searching for evidence of violation the agency has "a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law." *United States v. Morton Salt Co.,* supra at p 643.

We have already dealt with the character of the documents sought by the commission. We need only consider the question of relevancy. The subpoena calls for records relating to the purchase of forest products by the plaintiff from various persons. The subpoena states that these records are necessary in connection with the enforcement and administration of the act. To a reasonable person this request sufficiently indicates the connection between the documents demanded and the purpose which they were intended to serve. Under the act persons who harvest merchantable forest products must pay a privilege tax; the tax is measured by the quantity of forest products harvested. On the basis of these facts it is reasonable to assume that the commission's call for the plaintiff's books stemmed from a desire to learn whether the persons selling for-

est products to the plaintiff were paying the taxes imposed under the act. There being nothing in the record to indicate that the commission was acting officiously, we shall presume that it pursued its course for a legitimate administrative purpose.

We are of the opinion, therefore, that the records demanded are reasonably relevant to the questions which the commission sought to answer. *Civil Aeronautics Board v. Hermann,* 353 US 322 (1957); *Detweiler Bros., Inc. v. Walling,* 157 F2d 841 (9th Cir 1946).

■ The decree of the lower court declared that "the plaintiff's failure to comply with the subpoena * * * renders it liable to action at law pursuant to ORS 321.991 invoking criminal penalties." ORS 321.991 reads as follows:

> "Violation of any provision of this chapter is punishable, upon conviction, by a fine not exceeding $1,000 or by imprisonment in the county jail for not exceeding one year, or by both."

We regard this part of the decree as nothing more than a declaration by the court that ORS 321.991 is applicable, and that it does not purport to state whether its applicability results in a violation of the section. ORS 321.225 lists as a prohibited act the refusal of a taxpayer to obey a subpoena duces tecum. If we should apply ORS 321.991 literally the plaintiff would be subject to criminal prosecution for failure to obey the subpoena without first having the opportunity to test the validity in a civil proceeding. But such an interpretation might force us to declare the statute unconstitutional in this respect if it should impose upon the plaintiff an unreasonable risk of penalty for noncompliance. Cf. *State v. McQueen,* —— Mo —,

296 SW2d 85 (1956) ; *In re Atlas Lathing Corporation,* 176 Misc 959, 22 NYS2d 458 (1941). These sections of Chapter 321 must be read into ORS 306.190 which sets forth the powers of the commission to issue subpoenas generally and describes the consequences of disobedience. There it is provided that if a person refuses to obey a subpoena the commission may apply to the circuit court for an order requiring such person to show cause why the commission's demand should not be complied with. Upon failure to show cause the court must make an order requiring the person to comply with the commission's demand within such time as the court shall direct. Failure to obey this order constitutes contempt of court. These statutory provisions for the most part simply restate the common law method of enforcing subpoenas duces tecum.

We construe these statutes to mean that only after a person fails to obey the court's order under ORS 306.190 has he disobeyed the subpoena within the meaning of ORS 321.225. At that time, ORS 321.991 comes into effect and adds criminal sanctions to the enforcement technique set forth in ORS 306.190. We shall treat the decree of the lower court simply as a declaration that ORS 321.991 shall become applicable under the circumstances which we have described above.

The decree of the lower court is affirmed.