208 N.J. Super. 508 (1986)
506 A.2d 381
IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
HENKELS & MC COY, INC., DEFENDANT-RESPONDENT, AND CROSS-APPELLANT; AGABITI BROTHERS, INC.; ARMANDO AGABITI; AND STRACO CONSTRUCTION CO., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 1986.
Decided March 11, 1986.
*509 Before Judges FURMAN, PETRELLA and COHEN.
*510 Laurel A. Price, Deputy Attorney General. argued the cause for appellant (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Michael G. Brennan argued the cause for respondent, Henkels & McCoy (White & Uzdavinis, attorneys; Steven A. Asher, of Philadelphia bar, of counsel pro hac vice.)
The opinion of the court was delivered by PETRELLA, J.A.D.
The Attorney General appealed from certain aspects of the order granting him summary judgment against defendants Henkels & McCoy, Inc. (H & M) and Agabiti Brothers, Inc.[1] in a civil antitrust action. The issues on this appeal concern the available remedies under the New Jersey Antitrust Act, N.J.S.A. 56:9-1, et seq. Specifically, the Attorney General challenges the quantum of civil penalties assessed against defendants and the denial of counsel fees to him, on behalf of the State. H & M cross-appealed from the entry of summary judgment against it. We affirm both as to the appeal and the cross-appeal.
Suit had been instituted under the Antitrust Act against defendants alleging that they had conspired to rig bids for construction work performed for Public Service Electric and Gas Company (PSE & G) and Elizabethtown Gas Company. The complaint alleged that the conspiracy had begun before the May 21, 1970 effective date of the Antitrust Act.
After discovery was completed the Attorney General successfully moved for summary judgment based primarily on the depositions of officers of the various parties to the conspiracy, most of whom were given immunity individually from prosecution in exchange for their testimony. The deposition of Norris Anders, Vice President and Manager of H & M's New Jersey *511 division, was given under a grant of immunity. Anders testified that he met with representatives of Stratco in the "early 70's" to discuss their upcoming bids for the annual gas main blanket contract[2] for PSE & G. Anders said that he and Henry Strahle, Stratco's principal (who also was deposed under a grant of immunity), submitted their bids so that H & M would be the low contractor in the Burlington area and Stratco would be low bidder for the Audubon district. Bids in subsequent years were submitted based upon agreed percentage increases over the prior year's bids. Except for a period of about three years in which bid-rigging was discontinued because there was much less work due to a gas shortage, the bidding arrangement was continued both for gas main blanket contracts and for individual gas main contracts.
The deposition of Harry Fromm, Superintendent of Stratco, was also given under a grant of immunity. He testified that he exchanged bid figures with Anders of H & M. He said his predecessor at Stratco also told him that bid information had previously been exchanged with H & M. Fromm said that some time between 1970 and 1976 he met Anders at Strahle's residence to fix bids for PSE & G's gas main blanket contract. Fromm said that in years subsequent to his first meeting with Anders, except the years involved in the gas shortage, he discussed by telephone with Anders what percentage increase they should add to their bids. After the end of the gas shortage Fromm again met Anders in the latter part of the 1970's, at Strahle's home, to discuss bids, and thereafter discussed bids yearly by telephone.
Fromm admitted that he spoke with Anders regarding what H & M should bid over Suburban and Stratco for the PSE & G pavement restoration contract in the Burlington and Audubon districts. He agreed with Anders that Stratco would be the low bidder in the Audubon district and H & M would be the low *512 bidder in the Burlington district with regard to scattered street openings. Fromm also said that he exchanged bid information for individual gas main contracts with Anders and Agabiti. Strahle admitted having meetings with Anders and Fromm to discuss bids for PSE & G contracts.

I
The grant of summary judgment against H & M and Agabiti Brothers included injunctive relief and civil penalties under N.J.S.A. 56:9-10(c) of $100,000 against H & M and $20,000 against Agabiti Brothers.
The Attorney General contends that the $100,000 penalty against H & M and the $20,000 penalty against Agabiti are inadequate. He relies on In re Garay, 89 N.J. 104, 114 (1982), and argues that the judge should have fixed the per diem penalties and assessed defendants the greater amount that a formula using the per diem amount would produce by utilizing each day the conspiracy endured from the first date of the conspiracy until the date of service of the summons and complaint. The judge declined to apply the per diem alternative in N.J.S.A. 56:9-10(c) because he felt that the penalty requested of $500 per day for every day from the date the Antitrust Act took effect until the day of the complaint (which would have totaled over $2,000,000)[3] might be violative of the concept that civil penalties not be "so punitive either in purpose or effect as to negate the civil label." In re Garay, supra, 89 N.J. at 111-112, citing United States v. Ward, 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). It also may raise constitutional questions, see, e.g., Pope & Talbot, Inc. v. Smith, 216 Or. 605, *513 340 P.2d 960, 967-968 (1959). The judge expressed agreement with H & M's argument that a per diem fine is not invoked until after a violation of a specific court order.[4] The judge also found that a per diem levy was inappropriate because it was not clear precisely when the conspiracy began and ended, and there were gaps which included the time of the gas shortages. He said:
All of these problems weigh upon the Court not to attempt to assess the per diem penalty authorized by the statute even though a higher penalty might well on the facts of this case be appropriate in terms of the magnitude of the offense; more telling in terms of the deterrent purposes of the act and more nearly proper to recompense plaintiff for the costs of the investigation and prosecution of the case.
The judge felt constrained to apply what he may have viewed as an inadequate statutory civil remedy as to H & M. Accordingly, he applied the alternative penalty provision of the statute and imposed the maximum of $100,000 against H & M. He assessed $20,000, which he felt to be an adequate amount, against Agabiti Brothers.
The Attorney General argues that the trial judge erred in refusing to invoke a per diem penalty for each day the conspiracy lasted. He contends that factors such as lack of certainty of the end of the conspiracy and the gaps in conspiratorial activity around the time of the gas shortage should not have foreclosed application of a per diem fine based on findings of fact made under a preponderance of the evidence standard. The court below adequately answered this argument when it stated:
[N]o objective basis exists to assess a daily penalty without a plenary factual hearing. Since plaintiff has placed before the court it's [sic] entire case on the length of the conspiratorial plan it is doubtful that such a hearing will aid the Court in determining the exact number of days the penalty should run, even were it possible to escape the other problems faced hereinabove by the per diem.
*514 The court's determination that the record does not support imposition of a per diem penalty factually and legally is reasonable, as well as within the discretion of the trial court. See Kugler v. Koscot Interplanetary, Inc., 120 N.J. Super. 216, 250 (Ch.Div. 1972). Merely because the judge may have recognized a potential inadequacy of the $100,000 civil penalty for H & M, due to the company's size and gross profits for 1982, is irrelevant. In light of the language of the statute discussed hereinafter, the argument that the penalties imposed are inadequate as reimbursement for the costs of prosecution, is also irrelevant. The quantum of civil penalties is not related to the costs of the prosecution. Under our system, except as authorized by statute or court rule, the parties bear the costs of prosecution of a civil case. Moreover, we agree with the trial judge that there are serious legal issues and factual problems with calculating a per diem civil penalty in this case in the manner suggested by the Attorney General. See, e.g., Pope & Talbot, Inc. v. Smith, supra, 340 P.2d at 968. First, such extensive penalties as proposed could indeed negate the civil label. In re Garay, supra, 89 N.J. at 111-112; second, the dates of actual existence of the conspiracy are unclear;[5] third, there is a reasonable argument for not imposing a per diem fine in such cases until after entry of a court order; and fourth, the amount of the fine is discretionary.
As to the fine against Agabiti the trial judge noted:
With respect to Agabiti the Court finds it is a far less substantial company than Henkels & McCoy (though no less culpable thereby) but will, as a result, be deterred by a sum far less than that awarded Henkels. The penalty fixed is $20,000.
We are also satisfied that the judge has sufficiently stated a basis for that penalty.

*515 II
The Attorney General also contends that he is entitled to an award of costs and attorneys fees under N.J.S.A. 56:9-10(a). He had applied for such an award in the amount of $419,000. The judge denied that application, notwithstanding the Attorney General's assertion that the complaint for relief had been brought not only under N.J.S.A. 56:9-10(a) but also under subsection (b). We have already noted that in New Jersey the rule is that each litigant should bear responsibility for its own fees and costs unless there is a statute or rule to the contrary. See Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966). N.J.S.A. 56:9-10 categorizes the types of relief that may be obtained under the Antitrust Act as follows:
a. The Superior Court shall have jurisdiction to prevent and restrain violations of this act. The Attorney General may institute proceedings to prevent and restrain violations. In addition to granting prohibitory injunctions and other restraints for a period and upon terms and conditions necessary to deter the defendant from, and insure against, the committing of a future violation of this act, the court may grant mandatory injunctions reasonably necessary to restore and preserve competition in the trade or commerce affected by the violation. The court may issue temporary restraining orders or prohibitions and the court may proceed in a summary manner.
b. Any person may institute proceedings for injunctive relief, temporary or permanent in the Superior Court against threatened loss or damage to his property or business by a violation of this act, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue. If the court issues a permanent injunction, the plaintiff shall be awarded reasonable attorneys' fees, filing fees and reasonable costs of suit. Reasonable costs of suit may include, but shall not be limited to the expenses of discovery and document reproduction.
c. In addition to injunctive relief authorized pursuant to subsection a of this section, any person who violates the provisions of this act shall be liable to a penalty of not more than the greater of $100,000.00 or $500.00 per day for each and every day of said violation.
Although legislative history is sparse, it can be seen from the statutory scheme that subsection a is clearly limited to the Attorney General. Subsection b relates to any "person," and *516 allows awards of reasonable attorneys' fees, filing fees and reasonable costs of suit. The term "person" is defined in N.J.S.A. 56:9-2a:
As used in this act, unless the context otherwise requires "person" shall mean any natural person or persons, or any corporation, partnership, company, trust or association of persons.
Moreover, the statutory construction maxim "expressio unius est exclusio alterius" may also be invoked. Where the legislature has carefully employed a term in one place and excluded it in another, the excluded term should not be implied. Reilly v. Ozzard, 33 N.J. 529, 539 (1961); Resnick v. East Brunswick Tp. Bd. of Ed., 77 N.J. 88, 99 (1978); Shapiro v. Essex Cty. Freeholders Bd., 177 N.J. Super. 87, 94 (Law Div. 1980), aff'd 183 N.J. Super. 24 (App.Div.), aff'd 91 N.J. 430 (1982). It is apparent from the statutory scheme as a whole that "person" does not include the Attorney General, and that the legislature, when it wanted to include the Attorney General in the statutory context, knew how to do so as it did in N.J.S.A. 56:9-12, which provides:
a. Any person who shall be injured in his business or property by reason of a violation of the provisions of this act may sue therefor and shall recover threefold the damages sustained by him, together with reasonable attorneys' fees, filing fees and reasonable costs of suit. Reasonable costs of suit may include, but shall not be limited to the expenses of discovery and document reproduction.
b. The State and any of its political subdivisions and public agencies shall be deemed a person within the meaning of this section. The Attorney General, on behalf of the State or any of its political subdivisions or public agencies, or the political subdivisions or public agency at the direction of or with the permission of the Attorney General, may institute an action to recover the damages provided for by this section or by any comparable provisions of Federal law.
Here the statute specifically provides that the State and its subdivisions, including the Attorney General on their behalf, are included as persons within the ambit of that section.
Our review of the statute convinces us that except for situations covered by N.J.S.A. 56:9-12, an award of attorneys' fees is clearly limited to those suits instituted by "any person" under N.J.S.A. 56:9-10(b). Furthermore, when subsection a is examined in conjunction with subsection c, the reasons for the *517 distinction becomes even more apparent. The penalties under subsection c may only be obtained in a suit brought by the Attorney General and such funds are required by N.J.S.A. 56:9-19 to be deposited into a revolving fund "derived from litigation instituted by the Attorney General under this Act or the antitrust laws of the United States." Such funds are to be used to pay "any additional expenses incurred by the Attorney General in the administration of this act." The Legislature thus intended that, except for suits under N.J.S.A. 56:9-12, the Attorney General's costs in administering the act were to be paid from the fund established under N.J.S.A. 56:9-19.
A reading of the complaint in this case clearly indicates it was not brought under N.J.S.A. 56:9-12. Nor was any relief granted thereunder. Furthermore, it is doubtful that under the facts presented the Attorney General could have brought suit for treble damages under that section. That section appears to contemplate, taking into account N.J.S.A. 56:9-18, direct injury to person or property for claims of treble damages, with an exception not here applicable, as distinguished from injunctive relief. See Illinois Brick Co. v. State of Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); Mid-West Paper Prod. Co. v. Continental Group, Inc., 596 F.2d 573, 576-581 (3d Cir.1979).[6] See also In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 691 F.2d 1335, 1340-1341 (9th Cir.1982), cert. den. 464 U.S. 1068, 104 S.Ct. 972, 79 L.Ed.2d 211 (1984). Cf. N.J. Optometric Ass'n v. Hillman-Kohan, 144 N.J. Super. 411, 425-428 (Ch.Div. 1976), aff'd 160 N.J. Super. 81, 92 (App.Div. 1978) (no standing for nonprofit trade association under anti-trust act). Here there was no such direct injury to the State or any State agency. Moreover, the *518 Attorney General's complaint in this case had specifically asked for attorneys' fees "pursuant to N.J.S.A. 56:9-10." We thus conclude that the Attorney General is not entitled to attorneys' fees under N.J.S.A. 56:9-10b. We reject the Attorney General's argument that N.J.S.A. 56:9-18, which directs construction of New Jersey's Antitrust Act "in harmony with ruling judicial interpretations of comparable Federal antitrust statutes" insofar as practicable, is of any applicability on the attorney fee issue. The definition of "person" under 15 U.S.C. § 12 and 15 U.S.C. § 7 includes states. Cf. United States v. Cooper Corp., 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071 (1941). Hence, judicial decisions under federal law are not persuasive where our statute has deviated from the federal law. We thus find the Attorney General's arguments in that respect unavailing.
In summary, only persons, as defined in the Anti-trust Act (N.J.S.A. 56:9-2a) who bring civil antitrust actions may be awarded reasonable counsel fees under N.J.S.A. 56:9-10b, and that does not include governmental entities.

III
We turn now to H & M's cross-appeal regarding the grant of summary judgment against it.[7] H & M argues that plaintiff failed to prove any conspiracy as alleged in the complaint. Per se violations are unlawful "without the necessity for an inquiry in each particular case as to their business or economic justification, their impact in the market place, or their reasonableness." United States v. Sealy, Inc., 388 U.S. 350, 357-358, 87 S.Ct. 1847, 1853, 18 L.Ed.2d 1238 (1967). Bid-rigging is a hybrid form of price fixing which has been declared per se unlawful. United States v. Sealy, Inc., supra; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940). Defendants were charged under N.J.S.A. 56:9-3 *519 with conspiracy to restrain trade. There was ample uncontradicted testimony in the deposition of Anders (an officer of H & M), Fromm and Strahle, of the existence of an agreement to rig bids and hence a per se violation of the statute was established. H & M's assertion that evidence regarding bid rigging for individual PSE & G contracts is "sparse and contradictory" mischaracterizes the deposition testimony. Fromm, Anders and Strahle also testified that some (but not all) of the individual contracts for PSE & G were rigged.
H & M also argues that summary judgment should be used sparingly in antitrust cases, relying on Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). However, that concept does not appear as prevalent a rule in more recent cases as in former years. See Weit v. Continental Illinois National Bank & Trust Co., 641 F.2d 457, 464 (7th Cir.1981), cert. den. 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982), reh. den. 456 U.S. 938, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982); Aladdin Oil v. Texaco, Inc., 603 F.2d 1107, 1111 (5th Cir.1979) ("[S]imply because a case is based upon the antitrust laws does not suspend the application of Rule 56" [Federal summary judgment rule]). The trial judge considered summary judgment appropriate against H & M because:
Henkels & McCoy, the only party to resist summary judgment, did so, not on the basis of undisclosed facts, R. 4:46-5(a), but on the asserted failure of the facts revealed by discovery to make out a case as a matter of law. Henkels & McCoy's defense, therefore, rested on legal argument, not on the assertion of contrary facts.
H & M apparently does not challenge the ample deposition testimony regarding its bid-rigging of PSE & G gas main blanket contracts with Stratco. Rather it questions the judgment because of claimed disputed issues of material fact regarding the "Lipton Tea" job for Elizabethtown Gas and H & M's alleged rigging of a blanket pavement restoration contract. H & M also contends that factual discrepancies in the record precluded summary judgment. Regarding the paving blanket contract, it asserts that the record is not clear whether Anders *520 actually agreed to Fromm's proposal that H & M go above Suburban Paving's bid, despite that actual occurrence. Anders testified:
How interested I was in the paving for the Burlington district. I said, well, I've been very interested in it and I'm going to submit a price, you know, I know what I'm going to submit. Well, he said, you know, would you consider submitting prices over Suburban Paving.... I had a prearranged notion of what I was going to submit. I agreed to meet with Harry, and he gave me prices that were supposedly Suburban's prices or prices that I was supposed to be over for the next year; and when I looked at them, well, it didn't make much difference to me because they were under what I was going to submit anyway; but I did see those prices and I did submit prices that were over those prices.
* * * * * * * *
We had a meeting. He gave me those prices and, like I say, I was told that they were Suburban's prices and if I'd kindly be over them, which I agreed to, and when I went back and looked at the figures that I had and I was going to submit, I would have been over him anyhow.
We are satisfied that this testimony by Anders sufficiently established the conspiracy charge with respect to the Elizabethtown Gas "Lipton Tea" contract. Our examination of the record convinces us that the trial judge was correct as to H & M, and that the depositions of the representatives of H & M and others established, without material factual dispute, that a conspiracy to rig bids existed in which H & M was an active participant. Fromm, Stratco's Superintendent, Strahle of Stratco and Anders, an officer of H & M, all testified that they met and rigged bids for various contracts for PSE & G. Agabiti was not given immunity, and although he did not deny meeting and speaking with Anders, he refused to divulge the nature of the conversations, asserting a Fifth Amendment privilege. There was no substantial issue of material fact that would warrant disturbing the summary judgment. R. 4:46-2. Based on the proofs before the trial court, and the lack of issues such as motive or intent, the trial judge correctly granted summary judgment against H & M.
We affirm as to both the appeal and cross-appeal.
NOTES
[1] Agabiti Brothers did not cross-appeal and has not participated in this appeal. Hence, we will make only passing reference to it.
[2] This term and others were specifically defined in the complaint.
[3] The Attorney General argues that if criminal penalties applied they might exceed that amount, relying on the doubling of the pecuniary gain provision in N.J.S.A. 2C:43-3(e), and then a trebling of that amount for a corporation under N.J.S.A. 2C:43-4. The latter section authorizes restitution only as an alternative to such trebling. The instant case did not arise in a criminal case setting with the higher burden of proof standard. It was instituted as a civil case. See State v. Lawn King, Inc., 84 N.J. 179, 215-216 (1980).
[4] H & M cited to the trial court numerous CCH Trade Regulation Reporter cases and argued that its research disclosed, with one exception, that no state court antitrust statute penalty had been imposed greater than $45,000.
[5] It may be more logical to conclude that unless there was clear and convincing proof that those intervening dates should be included, considering only each and every day in which a material act occurred in furtherance of such conspiracy would provide a more rational basis for determining violation of the act rather than assuming that every intervening date should be counted.
[6] There is an exception for pre-existing, fixed-quantity, cost-plus contracts. See Mid-West Paper Prod. Co. v. Continental Group, 596 F.2d 573, 577 (3d Cir.1979). This case also held that consumers suffering indirect harm by anti-trust violations could bring injunctive relief even if barred from treble damages. Id. at 589-594.
[7] We need not address the question of whether disputed factual issues might have precluded summary judgment, if resisted, against Agabiti Brothers because that issue has not been raised on appeal.