Argued and submitted September 3, judgment of contempt affirmed and cases are remanded to the Tax Court for further proceedings December 2, 1993, reconsideration denied January 18, 1994

# DEPARTMENT OF REVENUE, STATE OF OREGON, *Respondent,*

*v.*

# UNIVERSAL FOODS CORPORATION, *Appellant.*

# DEPARTMENT OF REVENUE, STATE OF OREGON, *Respondent,*

*v.*

# UNIVERSAL FROZEN FOODS CO., *Appellant.*

## (OTC 2944, 2945; SC S39692)

862 P2d 1288

John Paul Graff, of Graff & O'Neil, Portland, argued the cause for appellants. With him on the brief was Richard W. Miller, of Duffy, Kekel, Jensen & Bernard, Portland.

Marilyn J. Harbur, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Theodore R. Kulongoski, Attorney General, Salem.

FADELEY, J.

**FADELEY, J.**

This case involves the authority of the Oregon Department of Revenue (the Department) to issue an administrative subpoena for the purpose of investigating facts related to the Department's duties.

In March 1990, a subpoena was issued under ORS 305.190(1). The administrator of the property tax division of the Department signed the subpoena as the official issuing it. It was entitled in the name of the Department of Revenue, was addressed to "C.T. Corporation System - Registered Agent for Universal Frozen Foods Corporation," and was served in Oregon on C.T. Corporation System. It requested production of documents relating to defendants' acquisition of potato processing plants physically located in Idaho, Washington, and Minnesota. Also requested were documents regarding operations at those plants for the year in which they were purchased and for the two prior years. None of the plants or the requested documents were located in Oregon. Universal Foods Corporation is a Wisconsin corporation authorized to do business in Oregon. Universal Frozen Foods Co. is an Oregon corporation and is a wholly owned subsidiary of Universal Foods Corporation. The subsidiary operated in Oregon and filed state income tax returns. The data sought was to be used to help establish real market values of third parties' potato processing plants in Oregon.

Defendants did not comply with the subpoena for various reasons. The Department sought enforcement of the division administrator's subpoena by application for a Tax Court order as provided in ORS 305.190(2).[1] That application

---

[1] Because all subsections of ORS 305.190 are relevant to the decision in this case, the statute is set out in full below:

"(1) The Director of the Department of Revenue, in conformity to the resolutions or rules of the department, may subpoena and examine witnesses, administer oaths and order the production of any books or papers in the hands of any person, company or corporation, whenever necessary in the prosecution of any inquiries deemed necessary or proper in their official capacity.

"(2) If any person disobeys any subpoena of the director, or refuses to testify when required by the director, the department may apply to the Oregon Tax Court for an order to the person to produce the books and papers or attend and testify, or otherwise comply with the demand of the department. The application to the court shall be by ex parte motion upon which the court shall make an order requiring the person against whom it is directed to appear before the court in the county in which the person resides or has a place of business on

resulted in an order that defendants comply with the subpoena, subject to confidentiality determinations to be made later by the Tax Court.

Defendants then attempted to appeal that order to this court. The appeal was dismissed in *Dept. of Rev. v. Universal Foods Corp.*, 311 Or 537, 815 P2d 1237 (1991), on the ground that there was not yet an appealable judgment because no final enforcement order concerning specific documents had been entered.

Thereafter, defendants filed a "supplemental motion for relief from subpoena enforcement" in the Tax Court. That motion asserted that "[p]laintiff was without authority to issue * * * the subpoenas upon defendants," citing ORS 305.190(1). The Tax Court limited the volume and scope of production ordered, authorized production at one of defendants' existing operating locations outside Oregon rather than requiring defendants to bring the documents to Oregon, and assured protection of the confidentiality of all valuation data that could be of potential interest to defendants' business competitors.[2] Nonetheless, defendants continued their refusal to comply with the court's order to disclose the information sought by the administrative subpoena.

The Tax Court rejected defendants' contention that the subpoena was issued without authority. That court found defendants in contempt for their continuing failure to comply with the court's order enforcing the subpoena.[3] The court

---

such date as the court shall designate in its order and show cause why the person should not comply with the demand of the department. The order shall be served upon the person to whom it is directed in the manner required by this state for service of process, which service shall be required to confer jurisdiction upon the court. Upon failure of such person to show cause for noncompliance, the court shall make an order requiring the person to comply with the demand of the department within such time as the court shall direct. Failure to obey any order issued by the court under this section is contempt of court. The remedy provided by this section shall be in addition to other remedies, civil or criminal, existing under the tax laws or other laws of this state.

"(3) ORS 305.420(5) shall apply to the issuance of a subpoena under this section."

[2] Moreover, ORS 305.192 presently further limits departmental disclosure of certain subpoenaed documents.

[3] During the course of this proceeding, defendants also unsuccessfully petitioned this court for a writ of mandamus to require the Tax Court judge to vacate his order enforcing the subpoena.

imposed a remedial sanction of "$500 per day, beginning September 16, 1992, and continuing every day thereafter, except for any appeal period, until defendants deliver unto plaintiff's possession the documents covered by the court order [*i.e.*, the subpoenaed documents, as restricted and modified by various orders of the Tax Court]." As noted, the Tax Court stayed imposition of the sanction during the pendency of this appeal from its judgment of contempt.

## AUTHORITY TO ISSUE

Defendants rely on ORS 305.190(1) to support their contention that the subpoena was issued without authority. Defendants argue specifically that there are no relevant "resolutions or rules of the department" and, thus, the subpoena could not have been issued "in conformity to" either resolutions or rules of the Department. The Department admits that there are no resolutions or rules relating to issuance of the subpoena in this case. The Department's brief states: "[N]ever in all its years of issuing subpoenas under ORS 305.190, has the department believed it necessary to repeat or embellish the guidance found in ORS 305.190 for exercise of its subpoena power. The department's power to issue subpoena's under ORS 305.190 is quite capable of exercise without further interpretation." The Department's brief also states: "Until the adoption of OAR 150-305.190, in January 1991 [after the subpoena was issued in this case], the department had not found it 'proper' to adopt rules under ORS 305.190."

The Tax Court interpreted the words found in ORS 305.190(1) — that subpoenas issue "in conformity to the resolutions or rules of the Department" — not to require that there be either a resolution or a rule concerning an investigative subpoena as a necessary condition precedent to issuance of a subpoena. The phrase at issue originated in Oregon Laws 1909, chapter 218, section 37. Chapter 218 was a complete new act covering administration of the state's tax system. Section 37 empowered a board of tax commissioners to require, by subpoena, production of any books or papers in the hands of any persons, company, or corporation, whenever necessary in the prosecution of any inquiries officially deemed necessary, just as ORS 305.190(1) provides that the

Director may do today. Oregon Laws 1913, chapter 193, section 1, changed the board's name to "a State Tax Commission." Failure to comply with a subpoena was declared to be a misdemeanor. *Id.* § 37.[4]

The State Tax Commission originally included the Governor, Secretary of State, State Treasurer, and two other commissioners. Together, the commissioners — a majority of whom were directly accountable to the people as elected officials — were the heads of the state's taxation agency. Oregon Laws 1969, chapter 520, abolished the office of commissioners and provided that a Director of the Department of Revenue be the successor to the commissioners. Indeed, the 1991 version of Oregon Revised Statutes (ORS 305.190 (1991)) continued a plural reference — "their official capacity" — which betrays the antiquity of ORS 305.190 and underscores the fact that the Director is, after 1969, the successor to the power to subpoena originally granted to the tax commissioners in 1909 and 1913.

■     At the time the words "in conformity to the resolutions" were enacted, they referred to a specific resolution adopted by majority vote of the commissioners to issue a subpoena directed to a certain information source. In that context, the language does not, on its face or by implication, *require* adoption of rules regulating the issuance of subpoenas prior to their issuance; if it did, the word "resolutions" would be unnecessary and meaningless. The Tax Court's interpretation of that clause is correct. If there is a relevant resolution or rule in existence, the subpoena must be "in conformity to" the resolution or rule. But the existence of a resolution or a rule is not a pre-condition to issuance.[5]

Defendants' appeal raises no other point concerning statutory authority to issue the subpoena.

---

[4] The enforcement procedure has been changed to one for contempt of a court order. *See* Or Laws 1955, ch 610, § 3 (adding a remedy subsection, including contempt, to ORS 306.190).

[5] In interpreting the statute in this case, we reach only the first level of analysis — text and context — described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

## CHALLENGE TO UNDERLYING ORDER

Defendants raise an additional threshold question that we must consider before turning to the dispositive issue in defendants' appeal.

■     As a general rule, contemnors, such as the Tax Court held defendants to be, may not collaterally attack the validity of an underlying order in an appeal from a judgment of contempt for disobeying that order. That rule arises, not as a protection for the rights attached to a party-litigant, but as a court-created protection to the continuing integrity of a court's order. *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977).[6]

■     In this case, the Tax Court had subject matter jurisdiction pursuant to ORS 305.410,[7] and personal jurisdiction over defendants, because defendants operate in Oregon, are registered to do business in Oregon, and appeared in the Tax Court proceeding without objecting to that court's jurisdiction over either the enforcement issue or defendants personally. The general rule restricting collateral attacks on underlying orders applies in this case unless an exception to that rule applies.

■     In *State v. Crenshaw*, 307 Or 160, 764 P2d 1372 (1988), the trial court ordered a deputy district attorney to

---

[6] The state attempted to concede the "no collateral attack" issue once defendants raised it on this appeal. Although the state argued that defendants did not meet the exception, the state "acquiesced in defendants' contention that defendants would be irremediably harmed before seeking appellate review in the sense that they would have to produce and give up the documents." (September 3, 1993, oral argument). The justification for the rule is that "[t]he integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review." *State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977). The purpose of the rule concerns judicial integrity and efficiency, not protection of the plaintiff. Therefore, regardless of the state's concession, we consider whether defendants may attack the validity of the underlying order to produce information as a part of their appeal from the judgment of contempt for refusing to comply with that order.

[7] ORS 305.410(1) provides, in part:

"Subject only to the provisions of ORS 305.445 relating to judicial review by the Supreme Court and to subsection (2) of this section [concurrent jurisdiction with the circuit courts and district courts in certain situations], the tax court shall be the sole, exclusive and final judicial authority for the hearing and determination of all questions of law and fact arising under the tax laws of this state."

produce a file for photocopying and sealing in an effort to preserve the record on appeal. The deputy district attorney refused. The trial court found him in contempt. He appealed. This court noted an exception to the general rule against "collateral attack" as follows:

> "We hold that a challenge to the merits of the underlying order may be made in any appeal from an order of contempt where, for constitutional, statutory or practical reasons, no other [adequate] remedy, either by appeal or mandamus, was available [as to that order]. The contemnor in this case was in such a position. He was entitled to question the validity of the underlying order in his contempt appeal." 307 Or at 168 (footnote omitted).

This court further held that "irremediable harm to a legally cognizable interest" is also a required element of the exception, in addition to lack of availability of mandamus, appeal, or other adequate remedy to alleviate the harm. *State v. Crenshaw, supra*, 307 Or at 168 n 7.

■ Defendants come within the exception stated, because the "harm" of disclosure of the information becomes irremediable when it is disclosed. This court denied defendants' petition for writ of mandamus and held that defendants could not appeal from the underlying, interlocutory orders to produce their records. *See also State v. Keenan/ Waller*, 307 Or 515, 518, 771 P2d 244 (1989) ("If the contemnor had no practical opportunity to challenge the court's order before complying or refusing to comply, and the order was erroneous, the judgment of contempt should be set aside.").

## VALIDITY OF ENFORCEMENT ORDER

■ Finally, defendants object to the Department's use of an administrative subpoena to obtain their records located outside the state. This court has held repeatedly, as to industrial concerns located in Oregon, that the tax commission or its successor, the Director of the Department of Revenue, may issue subpoenas directed to a specific purpose necessary to the performance of the duties of the Department. *Dept. of Rev. v. Capital Shelters, Inc.*, 295 Or 561, 563-64, 668 P2d 1214 (1983); *Dept. of Rev. v. D. R. Johnson Lbr. Co.*, 289 Or 679, 683, 617 P2d 603 (1980); *Southern Oregon Broadcasting Co. v. Dept. of Rev.*, 287 Or 35, 40, 597 P2d 795 (1979); *Pope &*

*Talbot, Inc. v. State Tax Com.*, 216 Or 605, 615, 340 P2d 960 (1959). The Supreme Court of the United States has upheld a federal agency's authority to issue such subpoenas under law, where, as here, judicial enforcement and supervision is also assured by law. *Oklahoma Press Publishing Co. v. Walling*, 327 US 186, 209, 66 S Ct 494, 90 L Ed 614 (1946). The treatises also support validity of that sort of subpoena when appropriately focused. 1 Davis, Administrative Law § 4:6 (2d ed 1978); 1 Koch, Administrative Law and Practice, § 5.51 (1985 and Supp. 1992).

Defendants do not cite any authorities to this court that contradict or diminish the effect of the foregoing decisions and treatises. Instead, they argue that enforcement of the subpoena is "unreasonable and oppressive," because defendants' records and the potato processing plants to which they relate are located outside Oregon.[8] That geographic fact does not make the Tax Court's carefully tailored and limited order enforcing the subpoena either unreasonable or oppressive. We are not cited to any authority relating to administrative subpoenas even hinting that it might. ORS 305.190(1) refers to "production of any books or papers in the hands of any person, company or corporation, whenever necessary in the prosecution of any inquiries deemed necessary or proper[.]" That statute is not limited to information located in Oregon nor to Oregon resident enterprises.

The inquiry here is "relevant to a lawful investigatory purpose" of the Department and is "no broader than the needs of the particular investigation" into the valuation of potato processing plants of third parties located in Oregon, thus qualifying under the standards set in *Pope & Talbot, Inc. v. State Tax Com., supra,* 216 Or at 615. That case permits "broad inquiry if authorized and relevant," including investigation concerning "persons not named in the subpoena," but mandates that "[t]he inquiry must be relevant to a lawful investigatory purpose and must be no broader than the needs of the particular investigation." *Id.* The subpoena was served in Oregon. Defendants have sought relief from Oregon courts

---

[8] Application of adjectives such as "oppressive and unreasonable" to the government's persistence does not establish that they correctly describe it. Epithets do not supply reasoning or substitute for a lack of legal theory to support the description.

and have participated fully in hearings and appeals before them. Defendants' business products cross the state's geographic boundaries. Their argument that a state agency has no power to acquire information located beyond the geographic boundaries lacks any foundation in this case.

Defendants also contend that the Tax Court's order enforcing the subpoena violates state and federal constitutional guarantees against unreasonable searches and seizures. Defendants recognize that those issues have already been decided, against their positions, in *Pope & Talbot, Inc. v. State Tax Com., supra; Southern Oregon Broadcasting Co. v. Dept. of Rev., supra; Dept. of Rev. v. Capital Shelters, Inc., supra*; and *Oklahoma Press Publishing Co. v. Walling, supra*. Defendants seek to avoid the force of *stare decisis* by asserting that those cases would be overruled under a "modern" analysis of state and federal search and seizure provisions.

None of the criminal cases cited by defendants provides any ground for distinguishing the enforcement order in this case from those upheld in *Pope & Talbot* or the other cases mentioned immediately above. The cases cited by defendants provide no basis for overruling the decisions in this court's cases listed above.

Defendants also argue that an administrative intrusion into private documentary information is not permissible without statutory authorization. That argument cannot avail defendants here, because the Department and the Tax Court act on the express authority of ORS 305.190.[9]

The judgment of contempt is affirmed. The cases are remanded to the Tax Court for further proceedings.

---

[9] Defendants also contend that rules of procedure that may apply to limit the territorial reach of subpoenas issued by Oregon courts describe the permissible geographic outer limits of an administrative subpoena issued pursuant to ORS 305.190. That contention fails to persuade. A court's rules of procedure provide no logical basis for limiting the scope of the Department's statutory administrative subpoena power.