STATE OF NEW JERSEY, PLAINTIFF, v. THE NAPP GRECCO COMPANY, ET ALS., DEFENDANT.

Superior Court of New Jersey
Chancery Division Burlington County

Decided May 10, 1986.

*Laurel A. Price* for plaintiff (*W. Cary Edwards,* Attorney General, New Jersey, Attorney).

*David R. Simon* for defendant Napp Grecco Co. (*Simon & Allen,* Attorneys).

*Steven A. Asher* admitted *pro hac vice* for defendant Henkels & McCoy, Inc. (*White & Vzdavinis,* Attorneys).

*Joel S. Bergman* for defendant Joseph M. Napp.

WELLS, J.S.C.

The issue raised by an exchange of correspondence between the parties and agreed at the management conference to be disposed of based thereon without oral argument is the adequacy of certain answers to written interrogatories propounded on the State in this civil anti-trust action. A further question surrounds the adequacy of the State's certification to the answers.

The amended complaint filed herein charges Napp Grecco and H & M, Inc. with conspiracy to rig bids on pipeline construction work required by Sun Pipe Line, a private interstate petroleum pipeline transportation company. The complaint emerged out of a broader investigation of bid rigging which was the basis of a prior action litigated before me, *Kimmelman v. Henkels & McCoy,* 208 *N.J.Super.* 508 (App.Div.1986). In that case the victims were two public utilities. It is apparent that central to the entire investigation was and is the testimony of Norris Anders, an employee of H & M. Six separate transcripts of either his grand jury testimony or his deposition testimony have been supplied to Napp Grecco.

Napp Grecco served a 32–question set of interrogatories (with numerous subparts) on Irwin I. Kimmelman (the then Attorney General) "Attn: Laurel A. Price, Esq., Deputy Attorney General." Price serves in the anti-trust section of the Division of Criminal Justice and has appeared in court for all proceedings in the case.

Price, himself, signed the interrogatory answers returned to Napp Grecco over the following certification:

The undersigned hereby certifies that he is familiar with the contents of these interrogatories and the information sought in responses thereto. I further certify that I have made a diligent review of the files and materials in the possession of plaintiff which are or might be relevant to the interrogatories propounded. Based on the foregoing review I hereby certify that the foregoing responses hereto are true and correct to the best of my knowledge. I am aware that if any of the responses are willfully false, I am subject to punishment.

It is asserted this certification violates R.1:4–4(b). Normally, a party answering interrogatories in a civil case is required to certify his statements given in answers "are true," and Napp Grecco insists on that here, citing *Seiden v. Allen*, 135 *N.J.Super.* 253, 256 (Ch.Div.1975). Clearly, the State is a party, but *Seiden*, nonetheless, is distinguishable. There the party answering was defendant and third-party plaintiff who had first hand knowledge of the facts. That is not the case here. While the State is a party, it does not allege it is the victim of the purported bid rigging. It brings the action under *N.J.S.A.* 56:9–6, –10(a) and –10(c) in vindication of the public interest. All of what the State knows about the case comes either from private citizens, *i.e.*, Norris Anders, persons associated with Sun Pipe Line and Napp Grecco, or the business records of all of them. R.4:17–4(a) contemplated this situation when it authorized the "furnishing of all information available to the party" by an officer or agent when that party is a governmental agency. The rule goes on to require designation of information not within the personal knowledge of the officer or agent and a statement of its source with identifying information.

In view of the above, it cannot be intended by R.1:4–4(b) to require of the Attorney General an unqualified certification that the interrogatory answers he provides in the situation before the court are true. Such a certification would require the Attorney General to vouch for the credibility of those upon whom he depends for information to do his statutory duty. That places the law enforcement arm of the executive branch in an intolerable position and perhaps for fear of violating the

oath would cripple its effectiveness. Furthermore, the require-
ment of the usual certification would involve the Attorney
General in assessment of credibility, a typical function of the
judicial branch.

■ For those reasons the court approves the quoted certifi-
cation which should be redrawn, however, to cover two points:
(1) the certification should provide that the signer knows of no
facts leading him or her to believe the information is wilfully or
deliberately false; and (2) the certification should include lan-
guage found in R.4:17–4(a) that the signer is providing "all
non-priviledged information available to the State," constituting
an answer to the interrogatory. As a practical matter such a
certification imposes on State officials the potential of sanctions
for contempt (in addition to other sanctions, such as exclusion
of proferred evidence at trial) if they willfully and deliberately
withhold non-priviledged information or supply answers based
on statements of witnesses which they know are false.

■ Napp Grecco objects to the State's answers to interroga-
tories numbers 6–8, 10, 12, 13–16, 18, 19 and 23. As to
numbers 6, 7, 8, 10, 12, 13 and 18 a common theme is iterated in
the answers: the facts sought may be gleaned from "various
transcripts of Norris Anders" previously produced in discovery.
Once again reliance is placed on *Seiden v. Allen, supra.* In
opposition the State contends R.4:17–4(d) allows a party, where
"the burden of deriving or ascertaining the answer is substan-
tially the same for the party serving the interrogatory as for
the party served," to specify records from which the answer
may be derived. Deputy Attorney General Price contends that
the business of the anti-trust section is to investigate and
prosecute violations of *N.J.S.A.* 56:9–1 *et seq,* and that the
Anders transcripts are its "records." The argument is without
merit at least with respect to interrogatories seeking specific
facts. *Seiden,* in words this court concurs with, held:

Neither the letter nor the spirit of the rule allows a party to supply answers
which cast upon his adversary the impossible burden of ferreting out of a

deposition transcript that which the answeror intends as his answer. If the called-for information is contained in the transcripts of the deposition, it is the answeror's obligation to collect it and supply in the form required by the rule. [135 *N.J.Super.* at 256]

Thus where the query is the facts upon which the conspiracy is based (# 8); the acts of Anders (# 10); the facts establishing the continuing agreement (# 12); the facts supporting the submission of rigged bids, the fixing and maintaining of prices, and the allocation of the Sun Pipe Line job (# 13); and the identification of oral and written communications between defendants (# 18) a precise page and line specification of the Anders' transcript is required. Only such an answer can meet the mandate to respond "fully and responsively." R.4:17–4(a); *Seiden v. Allen, supra.*

As to more general questions such as "admissions of any party (# 6) or "declarations against interest" of any party (# 7), it would appear that the entirety of the Anders' transcripts could arguably be deemed admissions or declarations against H & M. In that respect at least the answer is proper. However, the State should precisely specify, as above, admissions or declarations, if any, found in the deposition testimony or other evidence which are attributable to Napp Grecco or to which it might be bound under the law of agency and on which it intends to rely. If there are none it should say so.

As to questions 14 and 15 inquiring as to who was invited to bid, who actually bid and the amounts of each bid, the State's answer refers to Sun Pipe Line records. The answer is proper under R.4:17–4(d). As to questions 19 and 23 they require specific "yes" or "no" answers and should be so answered. If the answer is "yes," then the specific follow-up information must be provided or specified by reference to transcript page and line or to specified documents provided.

As to question 16, the State should explain either mathematically or by words the precise basis of its demand for $100,000 in penalties.

The additional answers and the amended certification required hereby shall be provided within ten days. It is so ordered.