Argued and submitted March 10, reversed December 15, 2004

Gary DENTAL,
dba Bales & Brady Towing, Dental's Towing,
and Bales & Brady West Towing,
*Respondent,*

*v.*

CITY OF SALEM,
*Appellant.*

02C11851; A119442

103 P3d 1150

Sharman Meiners argued the cause for appellant. With her on the briefs was City of Salem Legal Department.

Kevin T. Lafky argued the cause for respondent. On the brief was Elton T. Lafky.

Before Landau, Presiding Judge, and Armstrong, Judge, and Kantor, Judge pro tempore.

ARMSTRONG, J.

## ARMSTRONG, J.

The City of Salem appeals an ORCP 67 B judgment that declared that it had improperly rejected three bids submitted by plaintiff for towing contracts and that ordered the city to evaluate the bids on their merits. The city assigns error to the decision to grant plaintiff declaratory and injunctive relief. We reverse.

The material facts are undisputed. Plaintiff operates three towing companies. In 2001, the city decided to enter into seven contracts in three categories of towing services, and it issued a request for proposals (RFP). The RFP set forth detailed requirements for the proposals, including that the bidder "have obtained a Letter of Appointment issued by the Oregon State Police for placement on their Non-Preference Towing list"[1] and that the bidder include a copy of that letter with its bid.

A letter of appointment from the Oregon State Police establishes that a towing company has satisfied the requirements of OAR chapter 257, division 50, for a company to perform nonpreference tows. Among other things, those rules detail very specific substantive requirements for towing equipment—down to the size of the shovel that must be carried on a tow truck. *See generally* OAR ch 257, div 50.

Plaintiff submitted contract proposals to the city on behalf of his three towing companies; however, he failed to include in his bids the required appointment letters. Based on that failure, the city rejected each of plaintiff's proposals in November 2001, deeming them nonresponsive.[2] Plaintiff protested that action administratively; the city denied that

---

[1] According to the RFP, a nonpreference tow is "[a] tow on behalf of any vehicle owner, or person entitled to possession thereof, that is requesting towing services without preference for a particular towing company and at the expense of the owner or person entitled to possession of the vehicle."

[2] Plaintiff insists that, because one of the members of the city's bid review committee issued his Oregon State Police appointment letters, the city should be charged with knowing that he had the required letters. The city disputes that contention. That debate is irrelevant, however, because, even assuming that the city knew that plaintiff's tow companies at one time had the required appointment letters, the RFP required that submitted proposals include copies of the letters. There is no dispute that plaintiff's bids did not include the required letters.

protest on January 17, 2002. The city awarded all seven towing contracts to other companies on February 14, 2002.

On March 1, 2002, plaintiff brought this action in circuit court. Plaintiff's complaint set forth three claims: (1) a claim under ORS chapter 28 for declaratory judgment, (2) a claim under ORS 279.067[3] for injunctive relief, and (3) a contract claim. The city moved for summary judgment on plaintiff's claims, which the court denied. After a trial to the court, the court entered findings and conclusions in plaintiff's favor. In accordance with its findings and conclusions, the court entered a judgment declaring that the city's decision to reject plaintiff's bids was an unlawful decision and ordering it to consider the substantive merits of plaintiff's bids. In doing so, the trial court accepted plaintiff's argument that the city purchasing manual required the city to consider plaintiff's bids despite his omission of the appointment letters.[4] The city appeals, arguing that the matter was not justiciable in the trial court, that declaratory relief was not available to plaintiff, that the trial court applied the wrong standard of review, that neither ORS chapter 279 nor its purchasing manual require it to review plaintiff's bids, and that the relief that the trial court granted was erroneous.

Before we address those arguments, we briefly describe the law that applies to the process that the city uses for awarding public contracts through competitive bidding. ORS chapter 279 provides the general framework.[5] ORS 279.055 authorizes a local government, such as the city, to establish its governing body as a local contract review board. In 1970, the Salem City Council designated itself the local contract review board and adopted a purchasing manual. ORS 279.049 authorizes the Attorney General to promulgate

---

[3] As discussed below, ORS 279.067 is the statutory mechanism by which bidders and proposers may challenge purported violations of the public contracting statutes.

[4] In an order entered along with the declaratory judgment, the trial court made the following purported finding of fact: "The City's rules related to the submission for bids of this type provide that an omission of the type that occurred here can be corrected prior to a bid being awarded." Despite the fact that the trial court designated that statement a finding of fact, it is a conclusion of law that we review for legal error.

[5] ORS chapter 279 has been significantly modified and those changes become operative on March 1, 2005. Or Laws 2003, ch 794, §§ 332, 336-337.

model rules of public contracting procedure; however, ORS 279.049(5) allows a public contracting agency to disclaim the Attorney General's rules and promulgate its own rules of procedure. Consistently with ORS 279.049(5), the city has adopted its purchasing manual as its rules of procedure, declaring the Attorney General's rules to be inapplicable to the city. Pursuant to its purchasing manual, the city rejected plaintiff's bids as "nonresponsive."

■ On appeal, the city first argues that this dispute is nonjusticiable. Relying on *Brumnett v. PSRB*, 315 Or 402, 848 P2d 1194 (1993), the city reasons that, because it has already entered into exclusive contracts with towing companies that submitted responsive bids to the RFP, the court's decision in this case cannot have a practical effect on plaintiff's rights. Thus, according to the city, the trial court lacked jurisdiction to issue a declaratory judgment in plaintiff's favor.

The city's argument overlooks ORS 279.067(2). That statute provides that, in addition to "such equitable relief as it considers appropriate in the circumstances[,] * * * the court may award an aggrieved bidder or proposer any damages suffered by the bidder or proposer as a result of violations of [the public contracting laws] for the reasonable cost of preparing and submitting a bid or proposal." ORS 279.067(2). Thus, if the court were to declare that the city violated the public contracting laws when it rejected plaintiff's bids, such a declaration could support recovery by plaintiff of the reasonable costs of preparing and submitting his bids. In fact, plaintiff requested that relief in his claim under ORS 279.067. Therefore, this matter is justiciable.

■■ The city next argues that the court erred in granting plaintiff's requested declaratory relief under ORS chapter 28 because ORS 279.067 provides plaintiff with an exclusive— or at least more appropriate—remedy. The city correctly points out that "[a]lthough a trial court has broad power to provide declaratory relief, it lacks subject matter jurisdiction under ORS 28.010 if some other *exclusive* remedy exists. * * * In addition, the trial court should decline to exercise its jurisdiction under ORS 28.010 if some *more appropriate* remedy exists." *League of Oregon Cities v. State of Oregon*, 334 Or

645, 652, 56 P3d 892 (2002) (citation omitted; emphasis in original).

■ We consider the exclusivity argument first. ORS 279.067 provides, in part:

"(1) Any bidder or proposer adversely affected * * * may commence a suit in the circuit court for the county in which are located the principal offices of the public contracting agency, for the purpose of requiring compliance with, or prevention of violations of, [the public contracting laws], or to determine the applicability of [the public contracting laws] to matters or decisions of the agency."

Nothing in ORS 279.067 indicates that the legislature intended for its judicial review provisions to be the exclusive recourse of aggrieved bidders such as plaintiff. The absence of such an indication leads us to conclude that the legislature did not intend ORS 279.067 to be the exclusive source of judicial authority to address public contracting disputes. *See Oregonians for Sound Economic Policy v. SAIF*, 187 Or App 621, 630, 69 P3d 742, *rev den*, 336 Or 60 (2003) ("The * * * appropriate inquiry is whether the legislature has enacted statutory wording that communicates an intention that a particular statutory scheme is exclusive.").

The context of ORS 279.067 bolsters our conclusion that ORS 279.067 is not the exclusive mechanism for judicial review of this type of dispute. That context is provided by ORS 192.680, the statute from which the legislature borrowed the language in ORS 279.067. Tape Recording, Senate Local Government and Elections Committee, SB 190, Mar 21, 1983, Tape 40, Side A (statement of Legislative Counsel Kathleen Beaufait). ORS 192.680 provides the review mechanism for purported violations of the public meeting laws. In 1983, the same Legislative Assembly that enacted ORS 279.067 also amended ORS 192.680 to include language that makes review under ORS 192.680 the exclusive remedy for violations of public meetings law. Or Laws 1983, ch 453, § 2.[6]

---

[6] As amended, ORS 192.680 provides:

"(1) A decision made by a governing body of a public body in violation of ORS 192.610 to 192.690 shall be voidable. The decision shall not be voided if the governing body of the public body reinstates the decision while in compliance with ORS 192.610 to 192.690. A decision that is reinstated is effective from the date of its initial adoption.

Thus, to interpret ORS 279.067 to be the exclusive mechanism for seeking judicial review of a purported violation of the public contracting laws would be to add an exclusivity provision where there is none.

■ However, even if an alternative statutory scheme is not exclusive, it nonetheless may be more appropriate than declaratory relief under ORS chapter 28. For example, a

"court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration. In some of these cases, * * * the declaration is refused on jurisdictional grounds. In others, the refusal is justified on discretionary grounds. * * * [H]owever, it is wrong for courts to decline a declaration on the mere ground that another remedy was available, for declaratory relief was not intended to be exclusive or

---

"(2) Any person affected by a decision of a governing body of a public body may commence a suit in the circuit court for the county in which the governing body ordinarily meets, for the purpose of requiring compliance with, or the prevention of violations of ORS 192.610 to 192.690, by members of the governing body, or to determine the applicability of ORS 192.610 to 192.690 to matters or decisions of the governing body.

"(3) Notwithstanding subsection (1) of this section, if the court finds that the public body made a decision while in violation of ORS 192.610 to 192.690, the court shall void the decision of the governing body if the court finds that the violation was the result of intentional disregard of the law or willful misconduct by a quorum of the members of the governing body, unless other equitable relief is available. The court may order such equitable relief as it deems appropriate in the circumstances. The court may order payment to a successful plaintiff in a suit brought under this section of reasonable attorney fees at trial and on appeal, by the governing body, or public body of which it is a part or to which it reports.

"(4) If the court makes a finding that a violation of ORS 192.610 to 192.690 has occurred under subsection (2) of this section and that the violation is the result of willful misconduct by any member or members of the governing body, that member or members shall be jointly and severally liable to the governing body or the public body of which it is a part for the amount paid by the body under subsection (3) of this section.

"(5) Any suit brought under subsection (2) of this section must be commenced within 60 days following the date that the decision becomes public record.

"(6) The provisions of this section shall be the exclusive remedy for an alleged violation of ORS 192.610 to 192.690."

extraordinary, but alternative and optional. It is only where the court believes that *more* effective relief can and should be obtained by another procedure and that for that reason a declaration will not serve a useful purpose, that it is justified in refusing a declaration because of the availability of another remedy."

Edwin Borchard, *Declaratory Judgments* 302-03 (2d ed 1941) (footnotes omitted; emphasis in original), *cited in Brooks v. Dierker*, 275 Or 619, 624, 552 P2d 533 (1976); *Recall Bennett Com. v. Bennett et al.*, 196 Or 299, 323, 249 P2d 479 (1952). Whether to afford declaratory relief is a discretionary matter, and the court should do so in the absence of valid countervailing reasons. *Brown v. Oregon State Bar*, 293 Or 446, 451, 648 P2d 1289 (1982).

■■ As the Supreme Court did in *Brooks*, 275 Or at 625, we "hesitate to foreclose all resort to declaratory relief" for bidders in public contracting cases, for we could hypothesize a situation in which declaratory relief might be a superior remedy to the remedies available under ORS 279.067. Therefore, we decline to hold that a claim under ORS 279.067 is always more appropriate than a claim for declaratory relief. Here, however, there are valid countervailing reasons that make the trial court's award of declaratory relief improper. For example, the legislature chose in ORS 279.067 to force bidders challenging public contracting decisions to risk liability for attorney fees. ORS 279.067(4). Thus, relief under the statute is more effective—to use Borchard's standard— because it puts attorney fees on the table and serves as a filter for claims of questionable merit. Furthermore, in ORS 279.067 the legislature created a special statutory remedy under which plaintiff could recover all of the relief that he ultimately received, including injunctive relief. The only relief that plaintiff received here that he could not have received under ORS 279.067 was a declaration that the city had violated the very laws and regulations on which he based his claim under ORS 279.067.[7] But the declaration adds

---

[7] In his amended complaint, plaintiff also requested a declaration that the city violated "[p]laintiff's rights under * * * common law provisions." We assume that plaintiff refers to the rights at issue in his third claim for relief, which is a contract claim. The court did not resolve that claim before it entered the ORCP 67 B judgment in this case. Consequently, the contract claim is not before us, and we decide nothing about it or the availability of declaratory relief in relation to it.

nothing because, in order to obtain the injunctive and other relief that plaintiff sought, the court would necessarily have to conclude that the city violated the public contracting laws. In an instance like this, where there are countervailing reasons—*e.g.*, attorney fees—to decline to award declaratory relief, where the legislature has created a special statutory remedy, and where nothing in the record indicates that the declaratory relief at issue would serve a useful purpose, declaratory relief is inappropriate. Consequently, the trial court erred in awarding declaratory relief rather than addressing plaintiff's claim under ORS 279.067.

■ Our conclusion on that point normally would lead us to remand the case for the trial court to address plaintiff's claim on the merits. Nonetheless, for reasons of judicial economy, we will address plaintiff's claim under ORS 279.067 rather than remand it to the trial court. Plaintiff's claim under ORS 279.067 seeks the same relief that plaintiff received under his declaratory judgment claim. The analysis of the public contracting issues is identical under either claim, so by addressing the merits at this time we can avoid prolonging this litigation.

■ As noted, there are no material factual disputes, so we review the trial court's legal conclusions for legal error. *See, e.g.*, *Langlotz v. Noelle*, 179 Or App 317, 319, 39 P3d 271, *rev den*, 334 Or 260 (2002).

■ The ultimate question presented by this case is whether the city's rejection of plaintiff's bids was lawful. The applicable statute is ORS 279.035, which provides that a "public contracting agency *may* reject any bid not in compliance with all prescribed public bidding procedures and requirements * * *." (Emphasis added.) By using the word "may" in the statute, the legislature granted to public contracting agencies such as the city discretion in deciding whether to reject a bid that does not comply with all requirements. *Cf. Lane County Public Works Assn. v. Lane County*, 118 Or App 46, 53, 846 P2d 414 (1993); *State v. Harding*, 116 Or App 29, 32 n 4, 840 P2d 113 (1992), *rev den*, 318 Or 26 (1993). However, that discretion may be exercised only in the limited circumstances provided by the statute, for example,

when a bid is "not in compliance with all prescribed public bidding procedures and requirements." ORS 279.035.

That phrase allows a public contracting agency to reject any bid that does not comply with each and every procedure and requirement. The legislature has delegated broad authority to public contracting agencies to set their own requirements for public contracts. ORS 279.007(2). In the RFP, the city required a bidder to provide a copy of its appointment letter. Plaintiff concedes that his bids did not contain the appointment letters. Thus, there is no dispute that plaintiff's bids did not comply with *all* prescribed public bidding procedures and requirements.

 The true conflict, therefore, is over whether the city properly rejected plaintiff's bids on that basis. Because of the discretion granted to public contracting agencies by ORS 279.035, the city's action must be reviewed for an abuse of discretion.[8] Our task is to determine whether its choice was within the bounds permitted by law. *See, e.g., State ex rel Gonzalez v. Washington*, 182 Or App 112, 120, 47 P3d 537 (2002) (holding that Board of Parole and Post-Prison Supervision abuses its discretion only "when [it] exceeds the legal bounds on its authority"); *Bi-Mart Corp. v. Allen*, 164 Or App 288, 291, 991 P2d 1087 (1999) (holding that Workers' Compensation Board abuses its discretion if it "exceeds the legal bounds of its authority"). If ORS 279.035 alone sets those bounds, then the city's action would clearly fall within

---

[8] Plaintiff disputes this. Relying on a case in which a nonsuccessful bidder challenged the adequacy of the winning bid, plaintiff argues that we should review as a question of law whether his bid substantially complied with the bidding requirements. That case—*Schlumberger Technologies, Inc. v. Tri-Met*, 145 Or App 12, 929 P2d 331 (1996), *rev den*, 325 Or 80 (1997)—involved ORS 279.029, which requires public contracting agencies to award contracts to the "lowest responsible bidder" and defines that term to be the lowest bidder who, among other things, "[s]ubstantially complied with all prescribed public bidding procedures and requirements[.]" ORS 279.029(6). *See Schlumberger Technologies, Inc.*, 145 Or App at 17 (citing ORS 279.029(6)(a)). There is also language in *JAL Construction, Inc. v. Friedman*, 191 Or App 492, 494-500, 83 P3d 332, *rev den*, 337 Or 84 (2004), to suggest that, under ORS 279.029, substantial compliance with all prescribed procedures and requirements is a question of law. However, as the city points out, this is not an ORS 279.029 case. Our conclusion in this case—that a public contracting agency's decision under ORS 279.035 to reject a bid that does not comply with all prescribed procedures and requirements must be reviewed for an abuse of discretion—conflicts with neither *JAL Construction, Inc.* nor *Schlumberger Technologies, Inc.*

them. But in this instance, the bounds are further defined by the city's purchasing manual.

Pursuant to the purchasing manual, the city deemed plaintiff's bids nonresponsive and, hence, rejected them without considering their merits. The purchasing manual defines a nonresponsive bid as

"one which contains defects or omissions of a kind that make award to that bidder legally impossible. A defect renders a bid non-responsive if it is not possible to determine exactly what is bid without asking the bidder to supplement the bid with additional facts or figures concerning items upon which award will be determined (except where 'or approved equal' bids permit further inquiry to confirm whether the brand and model bid is acceptable).

"The following represent non-responsive bids:

"* Bids where equipment, material, or work proposed does not meet published specifications."

Under the purchasing manual, if the city deems a bid nonresponsive, it cannot consider it with the other bids; it must reject it.

Plaintiff insists, however, that, properly viewed, his bids were not nonresponsive but instead contain only "minor informalities." He bases this argument on another provision of the purchasing manual, entitled "Bids with Mistakes," that defines "minor informalities" as

"matters of form rather than substance that are evident from the bid documents, or insignificant mistakes that can be waived or corrected promptly without prejudice to other bidders or the City or user agency; that is, the informality does not affect price, quantity, quality, delivery, or contractual conditions except in the case of informalities involving unit price."

Plaintiff argues that, if the city had properly treated his bids as containing "minor informalities," then it could not, under its rules, reject them.

However, nothing in the purchasing manual supports plaintiff's conclusion. As noted, the legal question at this point is whether the purchasing manual rules bridle the discretion bestowed upon the city by ORS 279.035. In fact,

the nonresponsive bid rules do place a limit on the city's discretion: If a bid is nonresponsive, the city *must* reject it. On the other hand, no part of the purchasing manual limits the city's discretion in the other direction; that is, nothing in the purchasing manual *requires* the city to forgive certain mistakes. The minor informalities rule, on which plaintiff and the trial court relied, does not prohibit the city from rejecting bids with minor informalities. It follows that plaintiff cannot obtain the relief he seeks without being able to identify a provision of the purchasing manual that limits the city's discretion in such a manner. Thus, the city did not abuse its discretion in rejecting plaintiff's bids, and the trial court's contrary conclusion was error.[9]

In sum, the trial court's interpretation of the city's minor informalities rule was incorrect as a matter of law and the city did not abuse its discretion by rejecting plaintiff's nonresponsive bids. The trial court erred in entering judgment for plaintiff and in ordering the city to review the substantive merits of plaintiff's bids.

Reversed.

---

[9] Plaintiff argues that, even if the city correctly applied its purchasing manual rules, then those rules conflict with ORS chapter 279. We reject that argument without discussion.