Argued and submitted August 11, reversed and remanded October 21, 2020

Terezia NYLAND
and Michael Nyland,
*Plaintiffs-Appellants,*

*v.*

CITY OF PORTLAND,
an Oregon municipality,
*Defendant-Respondent.*

Multnomah County Circuit Court
18CV16409; A169691

477 P3d 442

Plaintiffs appeal a judgment dismissing their declaratory judgment action. Plaintiffs own a company that is state certified as a woman-owned business. Defendant believed that plaintiffs' certification was obtained fraudulently, began investigating them, and issued an investigative subpoena seeking information from them. Plaintiffs filed a declaratory judgment action seeking a declaration that the subpoena was "unreasonable" and "unduly burdensome" and asking that the trial court "declare that they have complied with their obligations" and "quash the subpoena." The trial court ruled that it lacked jurisdiction and dismissed plaintiffs' action with prejudice. In doing so, the trial court relied on *Bay River v. Envir. Quality Comm.*, 26 Or App 717, 554 P2d 620 (1976), which states that the Administrative Procedures Act (APA) ordinarily precludes a party from bringing a declaratory judgment action to challenge a nonfinal agency order. On appeal, plaintiffs acknowledge the holding in *Bay River*, but assert that an exception exists which permits them to challenge a nonfinal agency order for lack of probable cause. Defendant responds that plaintiffs lack standing, and that, alternatively, the APA does not apply because it is neither an "agency" under ORS 183.310(1) nor a "contracting agency" for the purposes of ORS 200.065. *Held*: (1) Plaintiffs have standing; (2) defendant is not an agency; and (3) while defendant is a "contracting agency," in this specific context, defendant is a municipality and thus not subject to the APA. Nevertheless, the trial court erred in relying on *Bay River* because, here, the APA did not divest the trial court of jurisdiction, as it did in *Bay River*.

Reversed and remanded.

Eric J. Bloch, Judge.

Matthew D. Colley argued the cause for appellants. Also on the briefs were Adam S. Rittenberg and Black Helterline LLP.

YoungWoo Joh argued the cause for respondent. Also on the brief was Denis M. Vannier.

Before Lagesen, Presiding Judge, and Kamins, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded.

**KISTLER, S. J.**

Plaintiffs filed this declaratory judgment action, alleging that the City of Portland's investigative subpoena was unreasonably broad and unduly burdensome. Relying on *Bay River v. Envir. Quality Comm.*, 26 Or App 717, 554 P2d 620 (1976), the circuit court ruled that it lacked jurisdiction and dismissed plaintiffs' action with prejudice. We conclude that the statutory premise that underlies *Bay River* is absent here and that the circuit court had jurisdiction. We reverse the circuit court's judgment and remand for further proceedings consistent with this decision.

Before turning to the facts, we briefly describe the statutory context in which this case arises. ORS chapter 200 recognizes the need to "eliminate the effects of long-term, open and pervasive exclusion of and discrimination against minorities and women from the business sector." ORS 200.015(d). Towards that end, ORS chapter 200 creates a program for certifying women-owned and minority-owned businesses, ORS 200.055, and it directs state and local "contracting agencies" to "aggressively pursue a policy of providing opportunities" for certified women-owned and minority-owned businesses, ORS 200.090.

The chapter also prohibits fraud in obtaining or retaining certification as a minority-owned or woman-owned business. ORS 200.065(1). It provides that the state and affected contracting agencies "shall investigate" whether a woman-owned or minority-owned business fraudulently obtained or retained certification. ORS 200.065(4). Finally, the chapter authorizes the state and affected contracting agencies to issue investigative subpoenas to "compel the production of books, papers, records, memoranda or other information necessary to carry out *** the affected contracting agency's duties." ORS 200.065(4); *see Pope & Talbot, Inc. v. State Tax Com.*, 216 Or 605, 610-12, 340 P2d 960 (1959) (discussing investigative subpoenas).

If a person fails to comply with a subpoena issued by an affected contracting agency, ORS 200.065(4) provides that "the affected contracting agency shall follow the procedure provided in ORS 183.440 [for issuing subpoenas in

contested cases] to compel compliance." ORS 183.440(2), in turn, authorizes an agency to apply to a circuit court to compel compliance with the subpoena. At first blush, the text of ORS 183.440(2) appears to direct circuit courts to hold a person in contempt for any failure to comply with an investigative subpoena.[1] The Oregon Supreme Court has explained, however, that a court may not hold a person in contempt for failing to comply with an investigative subpoena without first providing a graduated process that gives the person the opportunity to test the subpoena. *See, e.g.*, *Pope & Talbot, Inc.*, 216 Or at 621 (interpreting a comparable enforcement statute).[2]

In this case, plaintiffs own a painting company, Portland Coatings, Inc., which the state has certified as a woman-owned business. Over the years, the City of Portland entered into nine contracts with Portland Coatings to provide services to the city; as a result, the city is an "affected contracting agency" within the meaning of ORS 200.065(4). After Portland Coatings merged with another company, the state began an investigation into whether Portland Coatings had fraudulently retained its certification. That investigation led to a settlement. After the state and plaintiffs settled, the city issued its own investigative subpoena

---

[1] ORS 183.440(2) provides that, "[i]f any person fails to comply with any subpoena [issued in a contested case], the judge of the circuit court of any county, on the application of the hearing officer, the agency or the party requesting the issuance of or issuing the subpoena, shall compel obedience by proceedings for contempt as in the case of disobedience of the requirements of a subpoena issued from such court."

[2] The court observed in *Pope & Talbot, Inc.* that, "[i]f we should apply [the statute at issue in that case] literally the plaintiff would be subject to criminal prosecution [for contempt] without first having the opportunity to test the validity [of the investigative subpoena] in a civil proceeding." 216 Or at 620. To avoid that dilemma, the court interpreted the statutory authorization to hold a person in contempt in light of the applicable common-law procedures. *Id.* at 621. Specifically, the court explained:

> "[I]f a person refuses to obey a subpoena the [agency] may apply to the circuit court for an order requiring such person to show cause why the [agency's] demand should not be complied with. Upon failure to show cause the court must make an order requiring the person to comply with the [agency's] demand within such time as the court shall direct. Failure to obey this order constitutes contempt of court."

*Id.*; *see Couey and Couey*, 312 Or 302, 304-06, 821 P2d 1086 (1991) (reaching a similar conclusion in a related but separate statutory context).

to determine whether Portland Coatings had fraudulently retained its certification as a woman-owned business.

Initially, plaintiffs complied with the city's subpoena. Later, they concluded that compliance had become unduly burdensome. They filed this declaratory judgment action alleging that they had "made a reasonable effort to comply with an unreasonable subpoena." They further alleged that, if they were "required to continue producing documents, plaintiffs will suffer annoyance, oppression, and undue burden and expense." They asked the circuit court to "declare that they have complied with their obligations under the [city's] subpoena, quash the subpoena, and excuse plaintiffs from any further obligation as to the subpoena." Approximately a month later, plaintiffs filed a request for admissions, a request for production, and notices of deposition on the city.

The city filed an amended answer, admitting one of plaintiffs' allegations and effectively denying the remainder. The city construed plaintiffs' declaratory judgment action as essentially a motion to quash its subpoena, which led the city to append two motions to its amended answer. First, the city moved for an order denying plaintiffs' motion to quash. Second, the city moved for an order compelling plaintiffs to comply with its subpoena. The city, however, did not move to dismiss plaintiffs' declaratory judgment action; that is, the city did not move to dismiss plaintiffs' action because ORS 200.065(4) provides the exclusive or primary procedure for challenging the scope of its investigative subpoena, nor did it ask the circuit court to exercise its discretion to deny or abstain from granting declaratory relief because a more appropriate statutory remedy was available. *See, e.g.*, *Brooks v. Dierker*, 275 Or 619, 625, 552 P2d 533 (1976) (identifying that basis for concluding that declaratory relief is not an appropriate remedy).

With one exception, the city moved to quash plaintiffs' discovery requests. The city took the position that plaintiffs, as the persons responding to the city's investigative subpoena, could not themselves obtain discovery from the city. Plaintiffs countered that their discovery requests were filed as part of their declaratory judgment action and,

as such, were proper. Plaintiffs filed their own motion to compel the city to comply with their discovery requests.[3]

The circuit court held a hearing to resolve the parties' competing motions to quash and compel. The court began by asking plaintiffs whether they could have raised their challenges to the city's subpoena pursuant to the procedure set out in ORS 200.065(4); that is, could plaintiffs have refused to comply with the city's subpoena, required the city to apply to the circuit court for a motion to compel, and raised their objections to the scope of the subpoena in response to the city's motion to compel? Plaintiffs acknowledged that they could have done so, but they argued that they could also initiate a declaratory judgment action in circuit court to do the same thing. The circuit court then turned to the city. When asked why the city had not moved to dismiss plaintiffs' declaratory judgment action, the attorney representing the city responded that, after consulting with the clerk's office, he had decided against moving to dismiss and instead had raised the city's motions to quash and compel in plaintiffs' declaratory judgment action.[4]

The city did not dispute that plaintiffs could move to quash the city's subpoena, either in response to a motion to compel filed pursuant to ORS 200.065(4) or in plaintiffs' declaratory judgment action. The nub of the parties' dispute, the city explained, was whether plaintiffs could obtain discovery from the city at this stage of the process. As we understand the city's position, it started from the proposition that, while plaintiffs could object to the scope of the city's subpoena in response to a motion to compel under ORS 200.065(4), plaintiffs could not obtain discovery from the city

---

[3] Although the city did not challenge the court's jurisdiction to hear plaintiffs' declaratory judgment action, plaintiffs argued that the court had authority to hear their action under ORS 183.480(3), which permits an "action or suit" regarding the validity of a nonfinal agency order "upon showing that the agency is proceeding without probable cause." In response to plaintiffs' reliance on ORS 183.480(3), the city reasoned that ORS 183.480 did not apply to its investigative subpoena. The city also argued that the plaintiffs' probable cause argument went beyond the allegations in their complaint. Plaintiffs later acknowledged that they might need to amend their complaint to bring their action within ORS 183.480(3).

[4] The lawyers who represent the city on appeal are not the same lawyers who represented the city in circuit court.

as part of that process. It followed, the city reasoned, that plaintiffs could not gain greater discovery rights by filing an anticipatory declaratory judgment action that, in the city's view, was essentially a motion to quash.

The circuit court did not expressly address whether plaintiffs were entitled to obtain discovery from the city as part of their declaratory judgment action. Rather, the circuit court expressed doubt that plaintiffs could initiate a declaratory judgment action to determine whether the city's subpoena was unreasonable or unduly burdensome. The circuit court suggested that a motion to compel pursuant to ORS 200.065(4) was the preferred, if not the exclusive, route for challenging the scope of the city's subpoena—a suggestion that, if correct, could result in the dismissal of plaintiffs' declaratory judgment action and, with it, the discovery motions and motions to compel that plaintiffs had filed in that action.

Regarding the city's motion to compel, the court recognized that ORS 200.065(4) authorized the city to file a motion in circuit court to compel compliance with its investigative subpoena. The court observed, however, that ORS 200.065(4) appeared to contemplate a freestanding motion to compel rather than one filed as part of a declaratory judgment action to determine whether the city's subpoena was unduly burdensome. The court suggested that the city would be on stronger ground if it withdrew its pending motion to compel and filed a freestanding motion.

At the end of the hearing, the court asked the parties to submit additional briefing on whether it had jurisdiction to hear plaintiffs' declaratory judgment action. Among other things, the city argued that, under *Bay River*, the circuit court lacked jurisdiction to hear plaintiffs' declaratory judgment action. After considering the parties' briefing, the circuit court ruled that plaintiffs' action for declaratory relief sought to resolve an issue (the scope of the investigatory subpoena) that was more properly raised in response to a motion to compel under ORS 200.065(4). Citing *Bay River*, the court ruled that it lacked jurisdiction to consider plaintiffs' declaratory judgment action and dismissed that action with prejudice.

On appeal, plaintiffs raise one argument. They start from the proposition that the Oregon Administrative Procedures Act (APA), ORS 183.310 to 183.745, applies to the city's investigative subpoena. And they appear to acknowledge that, under *Bay River*, the APA ordinarily would preclude them from bringing their declaratory judgment action to challenge a nonfinal agency order, such as the subpoena. However, they argue that they come within an exception to *Bay River*. Specifically, they argue that ORS 183.480(3) permits them to bring a declaratory judgment action challenging a nonfinal agency order for lack of probable cause. *See Oregon Health Care Assn. v. Health Div.*, 329 Or 480, 492-94, 992 P2d 434 (1999) (recognizing that persons can bring an "action or suit" to challenge nonfinal agency actions under ORS 183.480(3) for lack of probable cause).

On appeal, the city abandons the position it took below—that the circuit court lacked jurisdiction under *Bay River*. It asserts instead a new jurisdictional defense— that plaintiffs lack standing to pursue their declaratory judgment action. Alternatively, the city argues that plaintiffs' claim that the city lacks probable cause under ORS 183.480(3) assumes, incorrectly, that ORS 183.480(3) applies to the city's subpoena. The city also questions whether plaintiffs' argument that the city is proceeding without probable cause goes beyond what plaintiffs alleged in their complaint.

In considering those arguments, we first explain why we conclude that plaintiffs have standing to bring their declaratory judgment action. We then turn to plaintiffs' argument that the city lacks probable cause under ORS 183.480(3) to issue an investigative subpoena. On that issue, we agree with the city that the APA does not apply to the city's subpoena except to the extent that ORS 200.065(4) makes one section of the APA—ORS 183.440—applicable. That conclusion, however, leads us to hold that the circuit court erred in relying on *Bay River* to determine that it lacked jurisdiction to hear plaintiffs' declaratory judgment action. Finally, we address the appropriate disposition of this appeal.

We begin with the city's argument that plaintiffs lack standing to bring a declaratory judgment action because plaintiffs are seeking "a judicial declaration that 'they have complied with their obligations under the [city's] subpoena.'" (Quoting plaintiffs' complaint; bracketed material added by the city.). The city argues that a declaratory judgment action permits plaintiffs to have their rights declared under a statute; it does not permit them to obtain a declaration that they have complied with their obligations under a subpoena. We read plaintiffs' complaint and the applicable statutes differently.

We start with ORS 200.065(4). That subsection provides that affected contracting agencies "shall investigate" whether a woman-owned or minority-owned business engaged in fraud in obtaining or retaining state certification, and it authorizes an affected contracting agency to "issue subpoenas *** to carry out *** the affected contracting agency's duties." Although ORS 200.065(4) does not expressly limit the scope of an investigative subpoena issued by an affected contracting agency, the court has long recognized that "there are limitations on [an] agency's power of compulsory disclosure." *Pope & Talbot, Inc.*, 216 Or at 615. Among those limitations, an investigative subpoena "must be relevant to a lawful investigatory purpose and must be no broader than the needs of the particular investigation." *Id.* As the court explained in *Pope & Talbot, Inc.*, "it is sufficient if the inquiry is within the authority of the agency, the demand not too indefinite and the information sought is reasonably relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable." *Id.* at 616 (internal quotation marks omitted).[5]

As we read plaintiffs' complaint, they alleged that the city's subpoena exceeded those limitations. Specifically, they alleged that the city's continued requests for production were "unreasonable" and that, if they were "required to

---

[5] The court explained in *Pope & Talbot, Inc.*, that those protections are sufficient limitations on an agency's authority to issue an investigative subpoena. 216 Or at 615-16. Of course, a person can also seek to limit production under a subpoena because a statute, privilege, or constitutional provision protects them from being required to disclose the requested information.

continue producing documents, [they] will suffer annoyance, oppression, and undue burden and expense." Stated more generally, plaintiffs alleged that continued compliance with the city's subpoena will cause them to suffer a nonspeculative injury (undue burden and expense) to a legally protected interest (the right to avoid complying with an unreasonably broad subpoena). Moreover, if the court agreed that the city's subpoena was unreasonable and unduly burdensome, the court's decision would have a practical effect on plaintiffs' rights. *See Morgan v. Sisters School District #6*, 353 Or 189, 195-97, 301 P3d 419 (2013) (listing those criteria for standing under the Oregon's declaratory judgment act). It follows that plaintiffs have standing to seek a declaration that the city's subpoena exceeded those statutory limits.

The city notes, however, that plaintiffs are seeking a declaration that "'they have complied with their obligations under the [city's] subpoena,'" and it argues that that request is not a permissible subject of declaratory relief. As we read plaintiffs' complaint, the phrase on which the city focuses goes to the supplemental relief that plaintiffs seek if the court agreed that further compliance with the city's subpoena would be unreasonable and unduly burdensome.[6] Perhaps plaintiffs' complaint could have been phrased more artfully. However, we do not think that asking for a declaration regarding what perhaps should have been viewed as supplemental relief divested plaintiffs of standing. We accordingly disagree that plaintiffs lack standing to bring their declaratory judgment action.

We turn next to whether, as plaintiffs argue on appeal, ORS 183.480(3) authorizes them to bring a declaratory judgment action to determine if the city lacks probable cause to pursue its investigative subpoena.[7] Plaintiffs' argument raises at least three issues. The first is whether the declaration that plaintiffs seek goes beyond the allegations

---

[6] We do not understand plaintiffs to be asking the circuit court to direct the city to stop its investigation based on the evidence that they have produced to date—a request that might fail to state a claim for which relief could be granted.

[7] ORS 183.480(3) provides: "No action or suit shall be maintained as to the validity of any agency order except a final order as provided in [sections authorizing judicial review of certain agency orders] or except upon showing that the agency is proceeding without probable cause * * *."

in their complaint. The second is whether the APA generally applies to the city's subpoena. The third is whether ORS 183.480(3) required that the city have probable cause to believe that plaintiffs engaged in fraud in order to initiate or continue its investigation.

We focus initially on the second issue noted above—whether the APA generally applies to the city's issuance of its subpoena. By its terms, the APA applies to the actions of "agencies," which the APA defines as "any *state* board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders[.]" ORS 183.310(1) (defining "agency" for the purposes of the APA; emphasis added). By definition, the APA applies to state agencies, not municipalities. The APA also sets out exceptions to that definition, which include the legislative and judicial branches of state government and certain specified state agencies. ORS 183.310(1), (2). The one unifying characteristic of both the agencies to which the APA applies and those that it expressly excepts is that they are "state" agencies. The City of Portland is a municipality, not a state agency. By its terms, the APA does not apply to the city's subpoena except to the extent that ORS 200.065(4) makes one section of the APA—ORS 183.440—applicable.

Plaintiffs, however, advance three reasons why the APA applies to the city's subpoena. Plaintiffs argue in their reply brief that the reference in ORS 200.065(4) to one section of the APA—ORS 183.440—does not preclude other sections of the APA from applying to the city's subpoena. Plaintiffs' argument assumes that the entire APA would apply to the city's subpoena were it not for the single reference to ORS 183.440. Plaintiffs, however, never explain the basis for that assumption, and it runs counter to the general rule that the APA does not apply to municipalities. Beyond that, when the legislature has provided that one section of the APA applies to the city's subpoena, we cannot apply additional sections of the APA that the legislature has not mentioned. *See State v. Rogers*, 330 Or 282, 290, 4 P3d 1261 (2000) (reiterating that courts may not add what the legislature has omitted).

Plaintiffs argue alternatively that they have a due process right, which ORS 183.480(3) reflects, "to seek relief

in the circuit court when [they] believe an agency is proceeding without probable cause." Plaintiffs, however, cite no due process case that supports that proposition. The only due process cases they cite stand for the general (and unremarkable) proposition that government must comply with due process if it deprives a person of a constitutionally protected liberty or property interest. Moreover, plaintiffs' apparent due process argument—that the city could issue an investigative subpoena only if it had probable cause to believe that plaintiffs fraudulently had obtained or retained their woman-owned business certification—is difficult to square with *United States v. Morton Salt Co.*, 338 US 632, 70 S Ct 357, 94 L Ed 401 (1950). In that case, the Court explained that, in civil investigations such as this one, an agency may issue an investigative subpoena "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 642-43; *accord Pope & Talbot, Inc.*, 216 Or at 615 (explaining that the legislature may authorize agencies to issue investigative subpoenas on less than probable cause).[8]

Finally, plaintiffs contended at oral argument, that, because the city is a "contracting agency" for the purposes of ORS 200.065(4), it is a contracting agency for the purposes of the Public Contracting Code and, as a result, is subject to the APA. Plaintiffs are correct that ORS 200.005(1) takes the definition of "contracting agency," as that term is used in ORS 200.065(4), from the Public Contracting Code. However, the definition is broader than plaintiffs perceive, and the Public Contracting Code is at odds with their argument that

---

[8] The court explained in *Brian v. Oregon Government Ethics Commission*, 320 Or 676, 684, 891 P2d 649 (1995), that the answer to the question posed by ORS 183.480(3)—whether an agency is proceeding without probable cause—depends upon the substantive showing required for the agency to proceed. Brian, for example, challenged the Ethics Commission's decision to initiate the second stage of an investigation into his conduct. *Id.* at 680. The commission's enabling statute provided that it could initiate that stage of an ethics investigation if it had "'a substantial, objective basis for believing that an offense or violation *may have* been committed.'" *Id.* at 684 (quoting ORS 244.260(9); emphasis added). The court explained that ORS 183.480(3) permitted Brian to challenge the commission's nonfinal order initiating the second stage of an ethics investigation on the ground that the commission lacked probable cause to believe that an ethics violation "may have been committed." *Id.* The commission, however, did not need probable cause to believe that Brian had in fact committed an ethics investigation before initiating the second stage of the investigation. *Id.*

every action a local contracting agency takes pursuant to the Code is subject to the APA.

ORS 200.005(1) provides that, for the purposes of ORS chapter 200, the term "'[c]ontracting agency' has the meaning given that term in ORS 279A.010," which sets out the definitions for the Public Contracting Code. *See* ORS 279A.010. The Public Contracting Code, in turn, provides through a series of cross-references that the term "contracting agency" means "state government bodies, local government bodies and special government bodies" that are "authorized by law to conduct a procurement." *See* ORS 279A.010 (1)(b), (y); ORS 174.109.[9] Contrary to plaintiffs' argument, the Public Contracting Code expressly recognizes that a contracting agency can be either a state contracting agency or a local contracting agency. It does not classify all contracting agencies as state agencies subject to the APA.

Beyond that, in identifying judicial remedies for actions taken by "contracting agencies," the Public Contracting Code distinguishes between "state contracting agencies" and "local contracting agencies." *See* ORS 279B.400. For example, general and contract-specific special procurements by the state are reviewable under the APA. *See* ORS 279B.400(2), (3) (providing that general special procurements are reviewable as rules under ORS 183.400 while contract-specific special procurements are reviewable as orders in other than a contested case under ORS 183.484). By contrast, special procurements by local governments "may be challenged by filing a writ of review under ORS chapter 34." ORS 279B.400(4). The same distinction applies to violations of ORS chapter 279A for which a judicial remedy is not otherwise available under the Public Contracting Code. ORS 279B.420(1). Violations by state contracting agencies in implementing the Public

---

[9] ORS 279A.010(1)(b) provides that "'[c]ontracting agency' means a public body authorized by law to conduct a procurement," and ORS 279A.010(1)(y) provides that "'[p]ublic body' has the meaning given that term in ORS 174.109." ORS 174.109, in turn, provides that "'public body' means state government bodies, local government bodies and special government bodies." It follows that "contracting agency," as used in the Public Contracting Code and ORS chapter 200, means "state government bodies, local government bodies and special government bodies" that are "authorized by law to conduct a procurement."

Contracting Code are subject to review under ORS 183.484 while similar violations by local contracting agencies are subject to review "by means of a writ of review under ORS chapter 34." ORS 279B.420(4) (violations by state contracting agencies); ORS 279B.420(5) (violations by local contracting agencies).

The Public Contracting Code is a complex set of statutes that attempt to define and regularize the procedures that state and local government bodies must follow when they procure goods and services. We do not attempt to interpret all (or even many) of its provisions. However, based on the sections discussed above, we are not persuaded that, in providing that the phrase "contracting agency" in ORS chapter 200 is defined the same way as that phrase is defined in ORS 279A.010, the legislature intended to require that all actions that a municipality (or local contracting agency) takes in investigating fraud pursuant to ORS chapter 200 are subject to the APA.

Plaintiffs' argument—that the circuit court had jurisdiction under ORS 183.480(3) to determine whether the city lacked probable cause to issue or enforce its subpoena— assumes that the APA generally and ORS 183.480(3) specifically apply to the city's subpoena. As explained above, however, neither the APA nor ORS 183.480(3) applies to a subpoena issued by the city. It follows that plaintiffs' reliance on ORS 183.480(3) is misplaced. Moreover, to the extent that plaintiffs argue that the due process clause requires that they be allowed to challenge the city's subpoena for lack of probable cause, their argument appears to assume, contrary to *Morton Salt Co.* and *Pope & Talbot, Inc.*, that the city could issue and enforce its investigative subpoena only if it had probable cause to believe that plaintiffs had engaged in fraud in retaining their business's woman-owned certification.

Our conclusion that the APA generally does not apply to the city's subpoena also calls into question the circuit court's ruling that it lacked jurisdiction over plaintiffs' declaratory judgment action. As we understand the circuit court's ruling, it turned on three propositions. First, the court started from the proposition that plaintiffs' declaratory

judgment action alleged only that the city's subpoena was unreasonable and unduly burdensome.[10] The court reasoned, and plaintiffs agreed, that those objections could have been raised in response to a motion to compel filed pursuant to ORS 200.065(4) and ORS 183.440(2). Second, the circuit court assumed that the APA generally applied to the city's investigation. Finally, as the circuit court recognized, *Bay River* holds that the APA establishes a "comprehensive [and exclusive] pattern for judicial review of administrative decisions" that generally divests circuit courts of jurisdiction to hear other causes of action challenging an agency's orders. *See Bay River*, 26 Or App at 720 (concluding that the circuit court lacked jurisdiction to grant injunctive relief from an agency order that could have been challenged initially in an APA contested case hearing and, later, on judicial review of the resulting final order).

The circuit court appears to have concluded that the same comprehensive scheme for judicial review that divested the circuit court of jurisdiction in *Bay River* divested it of jurisdiction to hear plaintiffs' declaratory judgment action. The difficulty with the circuit court's reasoning is that, in this case, only one section of the APA—ORS 183.440—applies to the city's investigative subpoena. There is no applicable "comprehensive [and exclusive] pattern for *** judicial review," as there was in *Bay River. Cf. Bay River*, 26 Or App at 720.

To be sure, ORS 200.065(4), read in light of *Pope & Talbot, Inc.*, identifies a statutory path by which plaintiffs could have raised their objections to the scope of the city's subpoena. There is a difference, however, between a statutory path for getting an issue before a circuit court and a comprehensive pattern of judicial review that manifests a legislative intention to divest courts of jurisdiction over other causes of action challenging the agency's orders. *See Dental v. City of Salem*, 196 Or App 574, 579-80, 103 P3d 1150 (2004) (so holding). The comprehensive pattern of judicial review that was present in *Bay River* and that evidenced

---

[10] Although plaintiffs have argued that the city lacked probable cause to investigate their company, the circuit court's jurisdictional ruling focused on the claims that plaintiffs had alleged, not the one that they later argued.

a legislative intention to preclude other judicial remedies is absent here. We cannot say (and the city does not argue on appeal) that ORS 200.065(4) precluded the circuit court from exercising jurisdiction. It follows that the circuit court erred in ruling that it lacked jurisdiction over plaintiffs' declaratory judgment action.

We summarize our resolution of the arguments that the parties have raised on appeal. First, plaintiffs' complaint alleges that the scope of the city's subpoena is unreasonable and unduly burdensome. Plaintiffs have standing to seek a declaration under the declaratory judgment act to that effect. Second, under *Bay River*, ORS 200.065(4) does not divest the circuit court of jurisdiction to resolve that dispute. Third, the APA generally and ORS 183.480(3) specifically do not apply to the city's subpoena. It follows that plaintiffs' appellate argument that they may challenge the city's subpoena under ORS 183.480(3) for lack of probable cause rests on the incorrect legal premise.

One final issue warrants mention. In *Nelson v. Knight*, 254 Or 370, 460 P2d 355 (1969), the Oregon Supreme Court held that, even though a court has jurisdiction to hear a declaratory judgment action, it also has discretion to dismiss that action if another remedy is "'more effective or appropriate.'" *Id.* at 371-72 (quoting Edwin Borchard, *Declaratory Judgments* 302 (2d ed 1941)); *Brooks*, 275 Or at 625 (holding that the plaintiff's declaratory judgment action should be dismissed in favor of a nonexclusive statutory remedy); *Dental*, 196 Or App at 581-82 (holding that the plaintiff's declaratory judgment action should be dismissed in favor a more appropriate statutory remedy).

In *Nelson*, the Supreme Court exercised its discretion to dismiss the plaintiff's declaratory judgment action even though the defendant had neither preserved nor raised that nonjurisdictional issue. 254 Or at 371. Arguably, *Nelson* permits us to exercise our discretion to decide whether plaintiffs' declaratory judgment action should be dismissed, even though no party has raised that issue in this case. We question, however, how broadly we should read *Nelson*. The Oregon Supreme Court did not expressly consider its authority to resolve the case on a nonjurisdictional ground

that no party had raised, and the discretionary issue in that case might have seemed so obvious that the court implicitly concluded that no other resolution would be permissible. *See id.* at 373-74 (dismissing a declaratory judgment action raising an issue that could have been resolved in a pending criminal proceeding). We also note that, after *Nelson*, other jurisdictions have held that the decision whether to dismiss a declaratory judgment action in favor of a more appropriate remedy should be left, in the first instance, to the sound discretion of the trial court. *See Wilton v. Seven Falls Co.*, 515 US 277, 289, 115 S Ct 2137, 132 L Ed 2d 214 (1995) (defining procedure for declaratory judgments in federal courts).

We need not decide whether *Nelson* authorizes us to make that discretionary call in the first instance and without any request from the parties. Even if we have that authority under *Nelson*, we conclude that it is not appropriate to exercise it in this case. We note, as an initial matter, that plaintiffs' objections to the subpoena appear to still be in flux. Plaintiffs alleged in their complaint that the city's subpoena was unreasonably broad and unduly burdensome. However, they argued before the circuit court and again on appeal that the problem with the subpoena was that the city lacked probable cause to proceed. Plaintiffs do not appear to have settled on their basis for objecting to the city's subpoena, and the circuit court's jurisdictional ruling foreclosed them from amending their complaint to clarify exactly what their objection to the subpoena is.

Until plaintiffs settle on their basis for objecting to the city's subpoena, it is not possible to tell whether their objection can be adequately addressed in a proceeding to compel compliance under ORS 200.065(4). That issue, in turn, bears on the discretionary decision whether to dismiss a declaratory judgment action in favor of another proceeding. *See* Edwin Borchard, *Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments*, 26 Minn L Rev 677, 682 (1942) (so stating). Without knowing exactly what plaintiffs' objections to the subpoena are, we cannot determine whether their substantive objections can be adequately considered in response to a motion to compel under ORS 200.065(4).

Second, neither plaintiffs nor the city has briefed the nature of the statutory remedy set out in ORS 200.065(4). They have not addressed whether the legislature intended that ORS 200.065(4) would provide the exclusive or preferred remedy for enforcing the city's subpoena. *See Brooks*, 275 Or at 625 (considering whether the ability to pursue a nonexclusive writ of review to challenge an agency action was more appropriate than a declaratory judgment action); *Dental*, 196 Or App at 581-82 (considering procedural incentives that made a nonexclusive statutory procedure more appropriate than a declaratory judgment action). They have not briefed whether plaintiffs' objections (once those objections are clarified) can be adequately considered in responding to a motion to compel under ORS 200.065(4). And they have not briefed whether it makes a difference that plaintiffs did not file their declaratory judgment action until after the city had issued its investigative subpoena and started a procedure that leads statutorily to a motion to compel under ORS 200.065(4). In short, we do not have any briefing or argument from the parties on those and other issues that potentially bear on whether a motion to compel under ORS 200.065(4) is a more appropriate remedy than a declaratory judgment action.

We conclude that, in these circumstances, the better course is to limit our holding to the jurisdictional issues that the parties have raised and briefed on appeal. On remand, plaintiffs can clarify the basis for their objections to the city's subpoena, and the circuit court can determine, if requested, whether it should exercise its discretion to retain or dismiss plaintiffs' declaratory judgment action.

Reversed and remanded.